UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, et al.<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.<br><br>*Defendants*. | Civil Action No.: 1:25-cv-12162 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR LEAVE TO SUBMIT PSEUDONYMOUS DECLARATIONS**

Plaintiffs, the Commonwealth of Massachusetts, State of California, State of New York, State of Connecticut, State of Illinois, State of Delaware, District of Columbia, State of Hawai'i, State of Maine, State of Maryland, State of Michigan, State of Nevada, State of New Jersey, State of New Mexico, Josh Shapiro (in his official capacity as Governor of the Commonwealth of Pennsylvania), State of Rhode Island, and State of Wisconsin (together, "Plaintiff States"), respectfully submit this memorandum of law in support of its motion for entry of an order allowing certain non-party declarants (the "Doe Declarants") to file pseudonymous declarations in support of the Plaintiff States' anticipated opposition to Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1). Doc. No. 82.

Pursuant to Local Rule 7.1(a)(2), the parties have conferred to resolve the issue. Defendants do not oppose Plaintiffs' request to allow third-party declarants to submit materials using

pseudonyms. Defendants explain that their non-opposition is limited to the use of pseudonyms only and should not be understood as endorsing plaintiffs' asserted justifications for that request, conceding any factual allegations regarding fear of retaliation or harassment, or consenting to the Court's consideration of any such declarations. Defendants reserve all rights to contest the admissibility, relevance, and probative value of any declarations submitted.

Because the Doe Declarants provide medical care that is squarely targeted by the directives at issue in this litigation or speak to the experiences of their children who receive or plan to receive the at-issue medical care, and because all Doe Declarants meet the standard for a grant of pseudonymity, the request should be granted.

## INTRODUCTION

The Doe Declarants fall into two categories: medical professionals who provide gender-affirming care to minors and parents or legal guardians of transgender or gender non-conforming adolescents under the age of 19 that have received, are receiving, or plan to receive gender-affirming care. The anticipated declarations will support Plaintiff States' opposition to the portions of the Defendants' motion to dismiss Plaintiffs' Complaint filed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and will provide the Court with important context and evidence regarding the substantial injury Defendants, Donald J. Trump, in his official capacity as President of the United States, the U.S. Department of Justice (DOJ, the Department) and Attorney General of the United States Pamela Jo Bondi (together, "Defendants") imposed on Plaintiff States. The anticipated declarations will show the Defendants' actions have harmed and will continue to harm the ability of providers of gender-affirming care, including providers affiliated with public institutions in Plaintiff States, to practice medicine and provide access to essential, evidence-based medical care, as well as the broader harms to impacted populations within Plaintiff States.

The Doe Declarants have come forward at serious personal risk. As described further below, each of these groups has expressed serious concern that publicly disclosing their participation in and submission of a declaration in this case carries safety and security concerns. For example, gender-affirming care providers fear becoming the target of retributive criminal and civil enforcement actions undertaken by the Defendants, as well as of harassment, attacks, or other targeted actions by third parties. If parents and guardians expose their identities when testifying to the private health care experiences of their children and the impact on their families, they would face increased risk of becoming targets of investigations and harassment. Revealing a parent or guardian's identity also increases the risk their children will be publicly identified, which could cause significant emotional distress for their children and risk their safety. Both of these groups are non-parties to this litigation.

Withholding the Doe Declarants' identity is necessary to avoid harm they likely would otherwise suffer as a result of their decision to come forward and provide evidence in this matter. If this request is denied, not only will Doe Declarants face grave risk to their physical safety, but it will also limit the evidence that Plaintiff States are able to put forward in this case. In addition, denying the request would have a chilling effect on other providers and parents from coming forward and providing evidence in other litigation, including litigation challenging government activity that threatens their rights. A list of the declarants' names can be provided to the court if the court so orders. Privacy in this case is crucial. The balance of privacy and safety against public interest in transparency weighs heavily in favor of granting Plaintiffs' motion allowing the use of pseudonyms.

## STATEMENT OF FACTS

On January 28, 2025, Donald J. Trump issued Executive Order 14187, "Protecting Children from Chemical and Surgical Mutilation." Doc. No. 1-5 (the Executive Order or EO). The

EO begins by stating, "[a]cross the country today, medical professionals are maiming and sterilizing a growing number of impressionable children." *Id.* § 1. Section 8(a) of the EO directs enforcement of the federal criminal statute banning female genital mutilation ("FGM") in connection with the provision of gender-affirming care and Section 8(c) directs the DOJ to prioritize investigations under the Federal Food, Drug, and Cosmetic Act ("FDCA") for giving misleading information about the effects of gender-affirming care. *Id.* § 8. These directives caused immediate fear, concern, and confusion among providers of gender-affirming care, transgender or gender non-conforming adolescents and their parents or guardians.

Those fears were amplified by the actions of the DOJ following the EO's directives. On April 22, 2025, Attorney General Pam Bondi issued a memorandum "Preventing the Mutilation of American Children," ("Bondi Directive") that stressed the DOJ will prioritize enforcement of these statues, along with investigations and enforcement under the False Claims Act ("FCA"), against providers and hospitals. Doc. No. 1-6. On June 11, 2025, Assistant Attorney General of the Civil Division, Brett A. Shumate, issued a memorandum ("Shumate Directive") reinforcing Bondi's pledge by stating, "[t]he Civil Division will use all available resources to prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities consistent with these directives." Doc. No. 1-7 at 2–3. The goal of the EO, Bondi and Shumate Directives is clear: "the Department of Justice will bring these practices to an end," Doc. No. 1-6 at 6, and they will do so by targeting providers for investigation and prosecution. Several hospitals and providers have already received subpoenas associated with these enforcement initiatives and many providers have ceased providing care as a result. Doc. No. 1 ¶ 132; Doc. No. 1-3. Nevertheless, Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) challenging whether providers face a "credible threat of enforcement against them." Doc. No. 82 at 9.

Separate and apart from their participation in this litigation, gender-affirming care providers and hospitals frequently face threats and violence.[1] Similarly, transgender adolescents and their families are frequently subject to harassment, which has only increased as transgender young people have come under increasing political attack. This heightens the risks to a population already disproportionately subject to bullying, along with depression and self-harm.[2]

Considering the risks facing those with knowledge relevant to showing the Plaintiffs have Article III standing to bring the case, Plaintiffs seek leave to file certain declarations under a pseudonym.

## LEGAL STANDARD

The First Circuit has adopted a "totality of the circumstances" test for courts to determine whether the individual's interests in pseudonymity outweigh the public interest in transparency. *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 73 (1st Cir. 2022) (*MIT*). In making the totality assessment, the First Circuit has described four general categories (or "paradigms") of cases that "ordinarily" call for a plaintiff to proceed under pseudonym. *Id.* at 70–71. As relevant here, those categories include: (i) where an individual "reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)"; (ii) where "identifying the

---

[1] *See* Landon D. Hughes, et al., *Adolescent Providers' Experiences of Harassment Related to Delivering Gender-affirming Care*, J. Adolesc. Health, 73(4) October 2023, at 1 (70% of providers said they, their practice, or their institution had received threats specific to delivering gender-affirming care); *see also* Press Release, U.S. Attorney's Office, D. Mass, *Westfield Woman Indicted for Alleged Hoax Bomb Threat Made to Boston Children's Hospital* (Oct. 7, 2022), https://www.justice.gov/usao-ma/pr/westfield-woman-indicted-alleged-hoax-bomb-threat-made-boston-childrens-hospital; *see also Boston police investigating after threat called into Boston Children's Hospital*, Boston 25 Rules, (June 20, 2025), https://www.boston25news.com/news/local/boston-police-investigating-after-threat-called-into-boston-childrens-hospital/QP25GFGYXVBSXPG2SO6KRLBLNA/.

[2] *See e.g.*, *Little v. Hecox*, Case No. 24-38, Amicus Brief of states, et al., at 6–7 (2025), available at https://www.supremecourt.gov/DocketPDF/24/24-38/384894/20251117212924311_Nos%2024-38_24-43%20Amicus%20Br%20for%20NY-HI-etal%20for%20Resps.pdf; *see also* Nicolas A. Suarez et al., , *Disparities in School Connectedness, Unstable Housing, Experiences of Violence, Mental Health, and Suicidal Thoughts and Behaviors Among Transgender and Cisgender High School Students – Youth Risk Behavior Survey*, Ctrs. for Disease Control & Prevention (Oct. 10, 2024) available at https://www.cdc.gov/mmwr/volumes/73/su/pdfs/su7304a6-H.pdf (last visited December 18, 2025).

would-be Doe would harm innocent non-parties"; and (iii) where "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated." *Id*. (quotation marks omitted). The third category of cases typically involves "intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors." *Id.* (quotation marks omitted).

Under this test, a court may grant pseudonymous status to parties and nonparties alike, s*ee id.* at 71 (recognizing application of test to nonparties), and courts have applied this test to submission of declarations. *See, e.g.*, *New York v. McMahon*, No. 1:25-cv-10601, 2025 WL 1478387 (D. Mass. Mar. 21, 2025) (granting leave to proceed pseudonymously to nonparty former and current employees of Defendants who feared retaliation).

In addition, Local Rule 83.6.11 addressing public access and confidentiality states that the court may, on request, redact or protect "[a]ny matters reasonably necessary to protect the privacy. . . of any innocent third party," Loc. R. 83.6.11(b)(1), and "[a]ny matters of a highly personal or private nature," *id.* at 83.6.11(b)(4).

**ARGUMENT**

Permitting the Doe Declarants to proceed under a pseudonym is warranted under the *MIT* factors and is well within the Court's discretion in this case. Both categories of Doe Declarants are already at risk of violence and harassment, and both are reasonably concerned that ties to this litigation could further expose them to such threats. Yet the threats of the Directives are so grave that they still wish to offer their testimony despite the risk that their names will be added to the list of targets. Without a grant of pseudonymity, the testimony they offer will never see the light of day. Submitting pseudonymous declarations therefore strikes an appropriate balance of protecting individuals from these threats while allowing public access to information.

**1. Providers of gender-affirming care should be permitted to present pseudonymous testimony.**

Providers' fears for their physical safety and public outing are very real and qualify for use of pseudonym under the first three paradigms of *MIT*. Provider declarants fear that submitting written declarations under their own names will significant physical and psychological harm, including risks to their personal safety and liberty as identified providers are regularly the targets of violence. *Supra* fn. 2; *In re: Dep't of Justice Admin. Subpoena No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151, at *16 (W.D. Wash. Sep. 3, 2025) (ordering sealing to minimize safety risks to providers of gender-related care).

Further, providers of gender-affirming care fear being stigmatized by becoming a target of DOJ investigation and potential prosecution. Defendants have made their intentions to providers clear: they "will rigorously enforce all laws that prohibit or limit these destructive and life-altering procedures." Doc. No. 1-5 at 2. Indeed, it is the risk of criminal and civil prosecution under laws never before applied to the context of provision of medical care that lies at the heart of this case. Providers seeking to submit declarations in this case fear that they will be the targets of civil or criminal actions by DOJ because the President and the Agency Defendants have told them they will.[3] Further, these providers are themselves non-parties, and their identification risks retributive conduct by the Defendants not only to themselves, but to the clinics, hospitals, and medical centers

[3] The DOJ has sent more than 20 subpoenas to doctors and clinics involved in performing gender-affirming care. *See*, Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical (last visited December 18, 2025).

in which they practice, and the patients to whom they provide care.[4] Some of those hospitals have already been subject to subpoenas from DOJ, Doc. No. 1 ¶ 132, and those who have not fear they will be next.

Last, requiring the provider declarants to identify themselves, where other providers have already been terrified into silence, would risk a future chilling effect on other medical professionals who offer gender-affirming care and who might choose not to litigate on behalf of their practice and patients. *Cf. MIT*, 46 F.4th at 71 (recognizing paradigm of cases in which "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated").

**2. Parents or legal guardians of adolescents in need of gender-affirming care should be permitted to present pseudonymous testimony.**

Parents and legal guardians of transgender or gender non-conforming adolescents satisfy the requirements to proceed pseudonymously, as these Doe Declarants risk harms to themselves and their children by testifying in this case if their identity is revealed. Their testimony will expose personal information about their children's medical treatment, identity, and other personal information best kept private. Courts have recognized this concern specifically in the context of challenges to bans on transgender medical care. *See, e.g.*, *Int'l Partners for Ethical Care Inc. v. Inslee*, No. 3:23-cv-05736, 2023 WL 7017765, at *1 (W.D. Wash. Oct. 25, 2023) (granting the parents of transgender and cisgender children leave to proceed under pseudonyms); *see also Poe v. Labrador*, No. 1:23-cv-00269, 2023 WL 8935065, at *19 (D. Idaho Dec. 26, 2023) (noting need

[4] For example, in an administrative subpoena issued to Boston Children's Hospital, DOJ sought "the personnel files of nearly all 2,000 individuals who work for BCH in any capacity, not limited to their employment as it relates to [gender-affirming care]," as well as the social security numbers and home addresses of patients receiving gender-affirming care. *In re Admin. Subpoena*, 1:25-MC-91324-MJJ, Memorandum of Decision at 12, Dkt. 33 (Sept. 9, 2025). To cast such a wide investigative net is indicative not of an intent to thoughtfully enforce federal law, but to threaten and intimidate anyone who might find themselves even tangentially associated with gender-affirming care.

to fashion injunction that protected plaintiffs, transgender adolescents and their parents, who were proceeding under pseudonyms).

In addition, this Court and others in this circuit have recognized that parents proceeding on behalf of their school-aged children under a pseudonym is appropriate in the interest of protecting "the privacy and health interests of their minor children, as well as the reality that the children could be identified through their parent's identities." *Jones et al., v. Massachusetts Interscholastic Athletic Association,* No. 22 cv 11426-AK, ECF No. 35 (D. Mass. Oct. 14, 2022) (electronic order); *Spurwink Servs., Inc. v Doe*, 25 US Dist. LEXIS 36841, at 4* (D. Me. 2025) (disclosure of parents' names "would undoubtedly increase the likelihood that the student's name would be revealed").

Other courts, too, have identified a judicial consensus that transgender individuals' concerns about being "subjected to harassment and violence" are "valid," and generally warrant leave to proceed pseudonymously. See *Doe v. Austin*, No. 2:22-cv-00368, 2023 WL 3568188, at *1 (D. Me. May 19, 2023) (citing *Foster v. Andersen*, No. 18-2552, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019) (collecting cases)). Parents and guardians' use of pseudonyms is essential in order to protect their identifies and those of their already vulnerable children. *Supra* fn. 3.

**CONCLUSION**

For the reasons articulated herein, the Plaintiff States respectfully request that this Court grant the Plaintiff States' motion for leave to allow the Doe Declarants to file pseudonymous declarations, with minimal redactions necessary to maintain anonymity of the Doe Declarants.

Dated: December 18, 2025 Respectfully submitted

**ANDREA JOY CAMPBELL**
Attorney General of the Commonwealth of Massachusetts
By: */s/ Adam M. Cambier*
Adam M. Cambier (BBO No. 690525)
  Assistant Attorney General
Allyson Slater (BBO No. 704545)
  Director, Reproductive Justice Unit
Chloe Cable (BBO No. 708179)
Morgan Carmen (BBO No. 716769)
Jak Kundl (BBO No. 713951)   Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
(617) 963-2278
adam.cambier@mass.gov
allyson.slater@mass.gov
chloe.cable@mass.gov
morgan.carmen@mass. gov
jak.kundl@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**ROB BONTA**
Attorney General of the State of California
By: */s/ Hilary A. Burke Chan*
Hilary A. Burke Chan*
  Deputy Attorney General
Neli Palma*
  Senior Assistant Attorney General
Kathleen Boergers*
Nimrod Pitsker Elias*
  Supervising Deputy Attorney General
Crystal Adams*
  Deputy Counsel General
1515 Clay Street, Suite 2000
Oakland, CA 94612
(510) 879-3096
Hilary.Chan@doj.ca.gov

*Counsel for the State of California*

**LETITIA JAMES**
Attorney General of the State of New York
By: */s/ Galen Sherwin*
Galen Sherwin*
  Special Counsel, Reproductive Rights
Travis W. England*
  Deputy Chief, Civil Rights Bureau
Rabia Muqaddam*
  Chief Counsel for Federal Initiatives
Elizabeth A. Brody*
  Assistant Solicitor General
Andres Ivan Navedo*
Zoe Ridolfi-Starr*
Stephanie Torre*
  Assistant Attorneys General
28 Liberty St.
New York, NY 10005
(212) 416-8000
Galen.sherwin@ag.ny.gov
Travis.england@ag.ny.gov
Rabia.muqaddam@ag.ny.gov
Elizabeth.brody1@ag.ny.gov
Ivan.navedo@ag.ny.gov
Zoe.ridolfi-starr@ag.ny.gov
Stephanie.torre@ag.ny.gov

*Counsel for the State of New York*

**WILLIAM TONG**
Attorney General of the State of Connecticut
By: */s/ Janelle R. Medeiros*
Janelle R. Medeiros*
  Special Counsel for Civil Rights
By: */s/ Emily Gait*
Emily Gait*
  Co-Special Counsel for Reproductive Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Emily.gait@ct.gov
Janelle.Medeiros@ct.gov

*Counsel for the State of Connecticut*

**KWAME RAOUL**
Attorney General of the State of Illinois
By: */s/ Aleeza Strubel*
Aleeza Strubel*
  Complex Litigation Counsel, Special Litigation Bureau
Abigail R. Durkin*
  Assistant Attorney General II, Special Litigation Bureau
115 S. LaSalle Street, 35th Floor
Chicago, IL 60603
(773) 914-3046
Aleeza.Strubel@ilag.gov
Abigail.Durkin@ilag.gov

*Counsel for the State of Illinois*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware
By: */s/ Vanessa L. Kassab*
Ian R. Liston*
  Director of Impact Litigation
Vanessa L. Kassab*
  Deputy Attorney General
Jennifer Kate Aaronson*
  Deputy Attorney General
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
Jennifer.aaronson@delaware.gov

*Counsel for the State of Delaware*

**BRIAN L. SCHWALB**
Attorney General of the District of Columbia
By: */s/ Samantha Hall*
Samantha Hall*
  Assistant Attorney General
400 Sixth Street, N.W.
Washington, DC 20001
(202) 788-2081
samantha.hall@dc.gov

*Counsel for the District of Columbia*

**ANNE E. LOPEZ**
Attorney General of the State of Hawaiʻi
By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
  Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
  Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**AARON M. FREY**
Attorney General of the State of Maine
By: */s/ Vivian A. Mikhail*
Vivian A. Mikhail*
  Deputy Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
vivian.mikhail@maine.gov

*Counsel for the State of Maine*

**ANTHONY G. BROWN**
Attorney General of the State of Maryland
By: */s/ Keith M. Jamieson*
Keith M. Jamieson*
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.state.md.us

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of the State of Michigan
By: */s/ Neil Giovanatti*
Neil Giovanatti*
Daniel Ping*
Assistant Counsel General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
PingD@michigan.gov

*Counsel for the State of Michigan*

**AARON D. FORD**
Attorney General of the State of Nevada
By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-2496
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**MATTHEW J. PLATKIN**
Attorney General of the State of New Jersey
By: */s/ Lauren E. Van Driesen*
Lauren E. Van Driesen*
Bryce K. Hurst*
Elizabeth R. Walsh*
Deputy Attorneys General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5279
Lauren.VanDriesen@law.njoag.gov
Bryce.Hurst@law.njoag.gov
Elizabeth.Walsh@law.njoag.gov

*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General of the State of New Mexico
By: /s/ *Amy Senier*
Amy Senier (BBO No. 672912) *
Senior Counsel
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060

asenier@nmdoj.gov
*Counsel for the State of New Mexico*

**JOSH SHAPIRO**
In his official capacity as Governor of the Commonwealth of Pennsylvania
By: */s/ Aimee D. Thomson*
Jennifer Selber*
General Counsel
Aimee D. Thomson*
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(223) 234-4986
aimeethomson@pa.gov

*Counsel for Governor Josh Shapiro*

**PETER F. NERONHA**
Attorney General of Rhode Island
By: */s/ Kathryn T. Gradowski*
Kathryn T. Gradowski*
Special Assistant Attorney General
Julia C. Harvey*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
kgradowski@riag.ri.gov
jharvey@riag.ri.gov

*Counsel for the State of Rhode Island*

**JOSHUA L. KAUL**
Attorney General of the State of Wisconsin
By: */s/ Jody J. Schmelzer*
Jody J. Schmelzer*
Assistant Attorney General
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707
(608) 266-3094
jody.schmelzer@wisdoj.gov

*Counsel for the State of Wisconsin*

*Pro hac vice granted

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2025 a true copy of the above document was filed via the Court's CM/ECF system and that a copy will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).


Dated: December 18, 2025                                         */s/ Stephanie Torre*
                                                                 STEPHANIE TORRE