# EXHIBIT 7

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

COMMONWEALTH OF
MASSACHUSETTS, *et al.*

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*

*Defendants.*

No. 1:25-cv-12162

**DECLARATION OF HEIDI E. MUELLER**

I, Heidi E. Mueller, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of 18, competent to testify as to the matters herein, and attest to the information set forth below through personal knowledge as well as through Illinois Department of Children and Family Services personnel who have assisted me in gathering this information from our institution.

2. I earned my bachelor's degree, *cum laude*, in psychology and history from Macalester College, completed Master's level studies in Social Psychology from Stony Brook University, and earned a Juris Doctor degree from the University of Chicago Law School.

3. I am the Director of the Illinois Department of Children and Family Services ("DCFS"), a position I have held since February 1, 2024. As Director of DCFS, I oversee the care and services that DCFS provides to abused, neglected, and dependent children placed in DCFS's custody by Illinois courts as well as the services that DCFS provides to children and families at risk of coming into contact with the child welfare system.

1

4.      Prior to holding this position, from December 2016 to February 2024, I served as the Director of the Illinois Department of Juvenile Justice where I oversaw the care, custody, and services provided to youth committed to that department by Illinois courts. I was first appointed by Governor Bruce Rauner after having served from April 2014 to December 2016 as the Deputy Director of Programs, responsible for the Department of Juvenile Justice's service array and rehabilitative model. From 2012 to 2014, I served as the Executive Director of the Illinois Juvenile Justice Commission, advising the Governor and the General Assembly regarding juvenile justice policy and practice and administering the State's federal grant funding under the Juvenile Justice and Delinquency Prevention Act.

## Department of Children and Family Services Background

5.      DCFS is a statewide agency that was created by the Children and Family Services Act "to provide social services to children and their families, to operate children's institutions, and to provide certain other rehabilitative and residential services as enumerated in this Act." 20 ILCS 505/1. Those services include placing children who have been removed from their parents in appropriate living arrangements, such as foster care, and ensuring the necessary number of placements and other resources of sufficient quality and variety to meet the needs of children and families. Foster care is a temporary placement for children who are alleged to be abused, neglected or dependent as defined by Illinois law. Children who are in the legal custody or guardianship of DCFS are known as "youth in care."

6.      Children can be placed in DCFS's custody and care in several ways. Generally, this would commence with DCFS child abuse and neglect investigation. During or after the investigation, the child may be placed in DCFS's temporary custody pursuant to a court order. Some children in temporary custody may be subsequently adjudicated abused, neglected, or dependent, after which DCFS may be awarded guardianship pursuant to a court's order. 20 ILCS 505/5(k); 705 ILCS 405/2-27(1)(d).

2

7. Children can enter DCFS's care at any time prior to their 18th birthday. In calendar year 2025, DCFS served 24,521 youth of whom 21,562 were under the age of 18 and remained in foster care for over seven days. There were 17,242 youth in care on June 30, 2025, the last day of the state fiscal year, 15,623 of whom were under the age of 18 and were in foster care for over seven days.

8. When DCFS is awarded guardianship of a child, DCFS is given the rights and responsibilities of legal custody and is required by law to act in the child's best interests. 705 ILCS 405/1-3(8). Legal custody of children in foster care remains with the DCFS Guardianship Administrator, who has a continuing obligation to act in the child's best interests. 705 ILCS 405/1-3(8); 89 Ill. Admin. Code § 327.2.

9. DCFS is generally awarded the right to consent to major medical procedures and to make decisions regarding medical treatment for youth in its care. DCFS may consult with the parent or responsible relative regarding the nature and extent of the medical procedure, 89 Ill. Admin. Code § 327.5(b)(1)(A). However, if the award of temporary custody to DCFS is without the right to make major medical procedures, DCFS must consult with the parent(s) regarding any medical procedures. In cases where parental rights have been terminated, DCFS may consent to medical procedures without consultation with the parents. 89 Ill. Admin. Code § 327.5(b)(1)(A). DCFS consent for medical treatment is not required under Illinois law for youth in care aged 18 and older. 89 Ill. Admin. Code § 327.5(a)(1).

10. As the legal guardian, DCFS is responsible for ensuring appropriate medical and behavioral health care for youth in its care. *See, e.g.*, 705 ILCS 405/1-3(8), (9). DCFS Administrative Rule 302.360 provides that "health care services are provided to children for whom the Department has legal responsibility who are receiving placement services. Usually, children in placement have been determined to be eligible for Medical Assistance provided through the Illinois Department of [Healthcare and Family Services]. The Department of Children and Family Services shall pay for the medical care of children in placement for whom it is legally responsible and who

3

are not eligible for the Medical Assistance program and who do not have the resources to pay for medical care." 89 Ill. Admin. Code § 302.360.

11. Under Illinois law, DCFS must timely identify the needs of children and youth placed in its custody and provide timely and appropriate services and placements to meet those identified needs and ensure children and youth in DCFS custody receive appropriate care. *See, e.g.*, 705 ILCS 405/1-2. *See also* 89 Ill. Admin. Code §§ 315.30; 315.100; 327.4. DCFS is also required by the consent decree in *B.H. v. Mueller*, 88-cv-05599 (N.D. Ill.) ("B.H. Consent Decree") to create and maintain a system that provides for (a) the prompt identification of medical, mental health, and developmental needs of youth in its care, and (b) timely access to adequate medical, mental health, and developmental services to meet identified needs. B.H. Consent Decree (1991), Paragraph 5.

12. DCFS provides medical and behavioral health services to youth in care through the Medical Assistance Program of the Illinois Department of Healthcare and Family Services ("HFS"). Since September 2020, youth in DCFS's care receive medical and behavioral health services through YouthCare, which is a specialized healthcare program used by HFS to administer medical, behavioral health, dental, vision, and pharmacy coverage for current and former youth in care aged birth through 21. Coverage is provided to children who are eligible for care under Title IV-E (Child Welfare) of the Social Security Act, as well as children served by DCFS through its subsidized guardianship and adoption assistance programs.

13. If a youth in care requires medically necessary care, that care is usually provided by a provider who is in the YouthCare network and covered through YouthCare. If YouthCare does not cover medically necessary care that a youth in care requires, DCFS is nevertheless required to cover the cost of that care pursuant to the B.H. Consent Decree.

### Services Delivered by DCFS: Health Care and Support for LGBTQIA+ Youth

14. DCFS must ensure that youth entering foster care receive an initial health assessment within 24 hours of assuming legal custody of the youth. The initial health screen shall

4

be conducted by a qualified health care provider in accordance with Early and Periodic Screening Diagnosis and Treatment (EPSDT) standards and should be of sufficient scope to permit the Department to ascertain enough information about the current health of the child to identify any health needs requiring immediate attention, and any health information needed to make an informed, appropriate placement decision. Within 21 days of DCFS obtaining temporary custody or guardianship of a child, DCFS shall ensure that the child receives a comprehensive health evaluation that meets the requirements of HFS's Healthy Kids Early and Periodic Screening, Diagnosis and Treatment Program.

15. DCFS maintains a Division of Clinical Practice that provides a multi-disciplinary trauma informed approach to support youth in care, their families, casework teams, and other stakeholders. The Division of Clinical Practice responds to a youth's behavioral and physical issues through a process of clinical assessments, evaluations, and recommendations made by experienced clinical staff with a goal to provide supportive services to the youth in care, the youth in care's families or caregivers, and the assigned casework team. The Clinical Practice Division includes the Behavioral Health Specialty Services program, which provides experts in specialty fields to increase staff support, expand awareness of services, assist in researching prospective services, and remain up to date in evidence-based practices.

16. Specialists and experts in the Behavioral Health Specialist Services provide clinical staffing and other consultations to LGBTQIA+ youth and casework staff. Additional services are provided by staff in the DCFS Guardianship Administrator's office. Youth entering DCFS custody who report that they are prescribed hormones or puberty blocking medications by a licensed medical provider will continue to receive those medications under appropriate medical supervision while in DCFS care. A referral is also made to the DCFS Nursing Services Program to ensure continuity of this medical care.

17. Youth in DCFS care under the age of 18 who ask to begin puberty blocking medication or hormone therapy are referred for a readiness assessment by culturally competent

5

professionals, which includes both a medical and behavioral health assessment and recommendation. The recommendation is reviewed by the DCFS Guardianship Administrator and the DCFS Medical Director before the DCFS Guardianship Administrator may consent to the care. The DCFS Guardianship Administrator also meets in person with the youth during the review and approval process.

18. During state Fiscal Year 2025 (July 1, 2024, to June 30, 2025), the DCFS Division of Clinical Practice consulted with 127 youth regarding issues related to LGBTQAI+ services or supports. During state Fiscal Year 2024 (July 1, 2023, to June 30, 2024), the DCFS Division of Clinical Practice consulted with 121 youth related to LGBTQAI+ services or supports. Many of the consultations involved lesbian, gay, bisexual, transgender, and questioning youth requesting care. While DCFS does not track the number of youth in care who identify as transgender, DCFS staff are currently aware of approximately 30 youth in care who are seeking transgender healthcare. In addition, DCFS is currently aware of seven transgender youth who receive hormone replacement therapy who are either under the age of 18 or who started hormone replacement therapy prior to the age of 18 but are currently over the age of 18 and continue to have an open legal case with DCFS.

## Description of Harm

19. All youth in care are protected by the Illinois Human Rights Act, which prohibits discrimination on the basis of, *inter alia*, actual or perceived sex or gender identity. Adults involved in the care of LGBTQIA+ youth in care have a legal and ethical obligation to ensure that these youth are supported and safe and that their rights are protected, consistent with the requirements of the Illinois Human Rights Act.

20. I am aware of Executive Order no. 14187, entitled "Protecting Children from Chemical and Surgical Mutilation" ("Executive Order"). I am also aware that, since late January 2025, the federal government has taken actions to implement the Executive Order, target providers of gender-affirming care, and restrict access to such care for patients under age 19. These federal

6

actions include the memorandum issued by Attorney General Pam Bondi on April 22, 2025, and the memorandum issued by Assistant Attorney General Brett Shumate on June 11, 2025 (collectively, "DOJ Directives") targeting the provision of gender-affirming care to patients under age 19.

21.     The Executive Order and DOJ Directives have interfered with DCFS's ability to comply with its obligations under state law and provide access to appropriate care to transgender youth in its custody or under its care. Specifically, these federal actions have had a chilling effect on providers who offer gender-affirming care in Illinois to patients under age 19 and could cause providers in Illinois to halt or significantly reduce the provision of gender-affirming care to people under the age of 19. DCFS is concerned that this chilling effect will intensify and more providers will cease providing gender-affirming care to adolescents and people under the age of 19 because of these federal actions.

22.     DCFS must provide medically necessary gender affirming care to youth in care to comply with its ethical and legal obligations under state law. Because of these federal actions, DCFS anticipates that it will become increasingly difficult to find providers who can meet the medical needs of transgender adolescents in DCFS custody. If the pool of providers continues to shrink, it will become increasingly difficult and may ultimately become impossible to find providers who can provide appropriate medical care to transgender adolescents.

23.     The inability to ensure access to appropriate medically necessary health care for youth in DCFS custody harms both DCFS and the youth it serves. As stated above, DCFS is aware of seven transgender youth in its custody who are under the age of 18 and who receive hormone replacement therapy. DCFS has collaborative relationships with two hospital-based gender clinics to provide youth in care necessary assessments and gender-affirming healthcare. If these hospitals are no longer able to provide this care, DCFS will be forced to find new health care providers who do not participate in Medicaid to provide these youth medically necessary healthcare. This may

may delay or interrupt the youth's necessary care, causing them harm and distress. This would also create a financial strain on DCFS.

24.    Youth in care have often experienced multiple traumas, including abuse and neglect and removal from the parent or parents and other family members. If youth in care who are receiving hormone therapy are denied access to their current provider and/or treatments, those youth may suffer additional harm, including physical health issues and increased anxiety and depression.

25.    DCFS wishes to comply with state law and ensure that transgender youth in care can access the medical care they need, including medically necessary gender-affirming health care. However, these federal actions have interfered with DCFS's ability to do so and may ultimately make it impossible.

I declare under penalty of perjury under the laws of the Illinois and the United States of America that the foregoing is true and correct.

DATED this 9th day of December 2025, at Chicago, Illinois.

*[signature]*

Heidi E. Mueller
Director, Illinois Department of
Children and Family Services