UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF
MASSACHUSETTS, *et al.*,

    Plaintiffs,

    v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

    Defendants.

Case No. 1:25-cv-12162

**NOTICE OF SUPPLEMENTAL AUTHORITY AND RELATED PROCEEDINGS**

Plaintiffs respectfully submit this notice of supplemental authority to bring to this Court's attention recently issued decisions and court proceedings relevant to the Plaintiffs' Opposition to Defendants' Motion to Dismiss. The new authorities and related proceedings concern a recent escalation in Defendants' enforcement actions against providers of gender-affirming care, and are relevant to Defendants' arguments that Plaintiffs lack standing to challenge the Executive Order and DOJ Directives because their injuries are merely "hypothetical," Defendants' Mem. In Supp. Of Mot. To Dismiss, Doc. No. 82, at 9, 11-13, and to Plaintiffs' response that healthcare providers in Plaintiff States, including ones operated by the states or their instrumentalities, face a credible[1] threat of prosecution. Plaintiffs' Opposition to Defendants' Motion to Dismiss, Doc. No. 86, at 13-20 (hereinafter "Ps' Opp'n"). These decisions and proceedings are also relevant to the issue of

---

[1] This Court may take judicial notice of the public dockets and pleadings in these related proceedings pursuant to Federal Rule of Evidence 201 as facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Lopes v. Riendeau*, 177 F. Supp. 3d 634, 666 (D. Mass. 2016). This Court may further consider evidence outside the pleadings to resolve jurisdictional questions such as standing. *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

whether the Executive Order and DOJ Directives are final agency action challengeable under the Administrative Procedure Act. *Id*. at 21-26.

1. **Defendants' Efforts to Enforce its Administrative Subpoena Against Rhode Island Hospital in the Northern District of Texas and Related Quashal Proceedings in the District of Rhode Island**

Plaintiffs request that this Court take judicial notice of decisions, orders, and briefing in related proceedings currently pending in the Northern District of Texas and the District of Rhode Island concerning DOJ's efforts to enforce an administrative subpoena against Rhode Island Hospital ("RIH"). These proceedings are relevant to Plaintiffs' argument that Plaintiff States, several of which operate similarly situated healthcare institutions that provide the same forms of care as RIH, face an imminent and credible threat of prosecution under the Executive Order and DOJ Directives. Ps' Opp'n at 13-20. They further relate to Plaintiffs' argument that Defendants are acting on the legal interpretations set forth in the Executive Order and DOJ Directives, which bears on the issue of whether the Directives constitute final agency action from which legal consequences flow. *See* Ps' Opp'n at 2, 21-26 (quoting *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000); *Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1007 (D.C. Cir. 2014)).

On April 30, 2026, DOJ filed a motion to enforce a pending administrative subpoena—which was one of the 20 subpoenas cited in Plaintiffs' Complaint and briefing issued pursuant to the DOJ Directives, *see* Ps' Opp'n at 9-10—against RIH in the Northern District of Texas. Chief District Judge Reed O'Connor of the Northern District of Texas granted DOJ's motion hours after it was filed, before RIH received notice or filed any response.[2] *In the Matter of Administrative*

---

[2] The N.D. Texas court is the sole court to have permitted one of these administrative subpoenas to proceed. The eight other courts to have considered these subpoenas have granted quashal. *See In Re: Administrative Subpoena No. 25-*

*Subpoena 25-1431-032*, No. 4:26-mc-00006-O, 2026 WL 1204327 (N.D. Tex. Apr. 30, 2026) (attached as Exhibit 1) (hereinafter "Texas Enforcement Order"); Docket in *In the Matter of Administrative Subpoena 25-1431-032*, No. 4:26-mc-00006-O, 2026 WL 1204327 (N.D. Tex. Apr. 30, 2026) (attached as Exhibit 2).

RIH filed an emergency motion to stay Judge O'Connor's order compelling compliance pending appeal, which the District Court denied. *In the Matter of Administrative Subpoena 25-1431-032*, No. 4:26-mc-00006-O, 2026 WL 1406051 (N.D. Tex. May 10, 2026) (attached as Exhibit 3). After expedited briefing from both sides, the Fifth Circuit also denied RIH's motion for a stay pending appeal. *USA v. Rhode Island Hospital*, No. 26-10431, Doc. No. 34-2 (5th Cir. May 12, 2026) (attached as Exhibit 4); Docket in *USA v. Rhode Island Hospital* (attached as Exhibit 5).

In its briefing to the Texas district court and the Fifth Circuit, DOJ argued that subpoena enforcement proceedings are *not* the proper forum to contest Defendants' novel interpretation of the FDCA. DOJ wrote, "RIH's protestations about its perception of the Government's view of the FDCA is precisely the sort of argument based on statutory coverage that cannot be entertained at this stage." Gov't Resp. in Opp'n to Emerg. Mtn. for Stay Pending Appeal at 9, Doc. No. 11, *In the Matter of Administrative Subpoena 25-1431-032*, No. 4:26-mc-00006-O (N.D. Tex. May 10, 2026) (attached as Exhibit 6); *see also* Opp'n to Emerg. Mtn. for Stay Pending Appeal at 17-18, Doc. No. 28-1, *USA v. Rhode Island Hospital*, No. 26-10431 (5th Cir. May 12, 2026) (attached as

---

*1431-019*, No. 1:25-mc-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9, 2025); *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151 (W.D. Wash. Sep. 3, 2025); *QueerDoc, PLLC, v. U.S. Dep't of Justice*, No. 2:25-mc-00042, 2025 WL 3013568 (W.D. Wash. Oct. 27, 2025); *In re: Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555 (E.D. Pa. 2025); *see also* Doc. No. 88-1 (*In re: 2025 UPMC SUBPOENA*, No. 2:25-mc-01069, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025)), Doc. No. 91-2 (*In Re: 2025 Subpoena to Children's National Hospital*, No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026)), Doc. No. 93-1 (*In re: 2025 UPMC SUBPOENA*, No. 2:25-mc-01069, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026)), Doc No. 97-5 (*Department of Justice Administrative Subpoena No. 25-1431-030*, No. 1:25-mc-00063, 2026 WL 33398 (D. Colo. Jan. 5, 2026)); *see also* Ps' Opp'n at 9-10.

Exhibit 7). Judge O'Connor's order compelling compliance adopted this reasoning. Texas Enforcement Order, Ex. 1, at 7.

This briefing is relevant to—and inconsistent with—opposing counsel's briefing and argument before this Court that Plaintiffs' lack standing and their claims are not yet ripe or not justiciable because the proper forum to challenge Defendants' novel interpretations of the statutes at issue is through opposing individual enforcement actions, such as motions to quash the DOJ subpoenas. *See* Transcript of April 23, 2026 Oral Argument, Doc. No. 99, at 21-23 (Court asked opposing counsel for an example of the type of enforcement action it would view as an appropriate place to challenge Defendants' interpretations and counsel pointed to "quashal actions regarding subpoenas issued by the Department of Justice"); *see also* Defendants' Reply in Support of Motion to Dismiss, Doc. No. 90, at 15 ("Whether the government has misconstrued the reach of a particular statute is a statutory question to be tested in a concrete enforcement action.").

In response to Judge O'Connor's order enforcing the subpoena, the Rhode Island Office of the Child Advocate ("RI OCA") moved to quash the subpoena in the District of Rhode Island. *See* Docket in *In Re: Motion to Quash Administrative Subpoena to Rhode Island Hospital*, No. 1:26-mc-00007 (D. R.I.), Doc. No. 1 (attached as Exhibit 8). RIH intervened and also moved to quash. *Id.* at Doc. Nos. 20, 28. The Rhode Island Court granted quashal on both motions and enjoined the DOJ "from seeking or receiving any documents related to this now invalid subpoena." In Re: Motion to Quash Administrative Subpoena to Rhode Island Hospital, No. 1:26-mc-00007, 2026 WL 1392565 (D. R.I. May 14, 2026) (attached as Exhibit 9) (hereinafter "Rhode Island Quashal Order").

In granting quashal, Judge Mary S. McElroy of the District of Rhode Island found the administrative subpoena (1) lacked any congressionally authorized purpose because Defendants'

theory that off-label prescribing by licensed practitioners gives rise to FDCA liability fails as a matter of law; (2) was issued for an improper policy purpose, as evidenced by the fact that "[t]he Administration has publicly characterized gender affirming care for minors as abuse, directed DOJ to bring its practice to an end, and celebrated when hospitals curtailed such programs as a result of this subpoena campaign"; and (3) demanded the production of records that cannot be obtained consistent with the Fourteenth Amendment informational privacy rights of children in state custody. Rhode Island Quashal Order, Ex. 9, at *14-23.

Following Judge McElroy's order in the District of Rhode Island, Judge O'Connor ordered RIH to turn over all responsive records to the subpoena to the Northern District of Texas to be held *in camera* "pending the outcome of the appeals" of the Texas order compelling compliance with the subpoena and of the Rhode Island order quashing the subpoena, before the Fifth and First Circuits, respectively. *In re Admin. Subpoena No. 25 1431-032*, No. 4:26-mc-00006-O, 2026 WL 1408263 (N.D. Tex. May 18, 2026) (attached as Exhibit 10). The First Circuit denied an emergency motion by the RI OCA to grant an injunction pending appeal that would order RIH not to turn responsive records over to anyone, including the Texas court. *Child Advocate for Rhode Island v. United States*, No. 26-1568, 2026 WL 1407553 (1st Cir. May 19, 2026) (attached as Exhibit 11).

In all these proceedings, filings are signed by DOJ attorneys including Assistant Attorney General Brett Shumate, Acting Director Lisa Hsiao, and other lawyers from the DOJ's newly established Enforcement and Affirmative Litigation Branch. *See, e.g.*, Exs. 6, 7.

### 1. DOJ's Initiation of Criminal Grand Jury Proceedings Pursuant to the Challenged Executive Order and DOJ Directives

Plaintiffs request that this Court take judicial notice of the publicly reported fact that DOJ has initiated a criminal grand jury investigation and recently issued grand jury subpoenas to hospitals in some Plaintiff States that provide gender-affirming care to minors. As with the RIH-

related proceedings discussed above, these proceedings are relevant to Plaintiffs' argument that that Plaintiff States, several of which operate similarly situated healthcare institutions that provide the same forms of care as the institutions targeted by the subpoenas at issue, face an imminent and credible threat of prosecution under the Executive Order and DOJ Directives. Ps' Opp'n at 13-20. They further relate to Plaintiffs' argument that Defendants are acting on the legal interpretations set forth in the Executive Order and DOJ Directives, which bears on the issue of whether the Directives constitute final agency actions from which legal consequences flow. *See* Ps' Opp'n at 2, 21-26 (quoting *Appalachian Power Co.*, 208 F.3d at 1021; *NEDACAP*, 752 F.3d at 1007).

On May 11, 2026, NYU Langone Health—which previously provided gender-affirming care to minors but terminated these services in February 2026 amid federal attacks on gender-affirming care providers—publicly announced that it had received a criminal grand jury subpoena from the U.S. Attorney's Office for the Northern District of Texas related to its provision of gender-affirming care. *See* New York University Langone Health, *Information for NYU Langone Health Patients* (May 11, 2026), https://nyulangone.org/public-notices/TYHPsubpoena (attached as Exhibit 12).[3] The grand jury subpoena, which NYU Langone Health has posted publicly on its website, seeks unredacted individual medical records of all minors who received gender-affirming care at NYU Langone Health between 2020-2026 and the names of providers and other staff involved in offering that care. Grand Jury Subpoena to NYU Langone Health (May 7, 2026), https://nyulangone.org/files/nyu-gj-subpoena.pdf (attached as Exhibit 13). In its public notice directed at patients and their legal guardians whose records Defendants seek, NYU Langone Health states that it is one of "several" institutions that also received criminal grand jury subpoenas

---

[3] *See also* Nate Raymond, Reuters, *New York hospital system receives grand jury subpoena in US transgender care probe* (May 12, 2026), https://www.reuters.com/legal/government/new-york-hospital-system-receives-grand-jury-subpoena-us-transgender-care-probe-2026-05-12/.

from the Northern District of Texas related to their provision of gender-affirming care to minors. NYU Notice, Ex. 12.

Plaintiffs further request that this Court take judicial notice of Judge O'Connor's findings regarding the grand jury proceedings in the RIH-related litigation discussed above. In that litigation, Chief Judge O'Connor of the Northern District of Texas confirmed there is an ongoing grand jury investigation into hospitals that provide gender-affirming care to minors and forbade DOJ and the U.S. Attorney's Office from disclosing any information about the grand jury proceedings to RIH, despite the  order from Judge McElroy in the District of Rhode Island requiring that it do so. *In the Matter of Administrative Subpoena 25-1431-032*, No. 4:26-mc-00006-O, 2026 WL 1406052 (N.D. Tex. May 12, 2026) (attached as Exhibit 14) (hereinafter "Texas Nondisclosure Order").

Judge O'Connor's order suggests that the grand jury investigation is intertwined with the civil investigative subpoenas issued pursuant to the Executive Order and DOJ Directives:

> The Court granted the Government's previous motion to disclose information related to the grand jury's existence because the Government specified that such information would be confined to in camera review by the Rhode Island court. That disclosure permitted the Government to disclose to the Rhode Island court that there is a legitimate investigation pending in this district, and responsive documents are due. Indeed, the Court has concluded as such, granted the Government's motion to enforce an Administrative subpoena, and is superintending this matter.

Texas Nondisclosure Order, Ex. 14 (citing Judge O'Connor's own order enforcing DOJ's civil administrative subpoena against RIH).

### 2.  Settlement in DOJ's Investigation of Texas Children's Hospital

Plaintiffs further request that this Court take judicial notice of Defendant DOJ's announcement on May 15, 2026, that it had reached a settlement in its investigation into Texas Children's Hospital ("TCH") for its provision of gender-affirming care to minors. Press Release, U.S. Dep't of Justice, *Justice Department Secures Landmark Resolution to End Pediatric*

*"Gender-Affirming    Care"    and    Create    Detransition    Clinic* (May    15,    2026), https://www.justice.gov/opa/pr/justice-department-secures-landmark-resolution-end-pediatric-gender-affirming-care-and (attached as Exhibit 15) (hereinafter "DOJ Settlement Press Release"). This announcement is relevant to Plaintiffs' argument that that Plaintiff States, several of which operate similarly situated healthcare institutions that provide the same forms of care as TCH, face an imminent and credible threat of prosecution under the Executive Order and DOJ Directives. Ps' Opp'n at 13-20. They further relate to Plaintiffs' argument that Defendants are acting on the legal interpretations set forth in the Executive Order and DOJ Directives, which bears on the issue of whether the Directives constitute final agency action from which legal consequences flow. *See* Ps' Opp'n at 2, 21-26 (quoting *Appalachian Power Co.*, 208 F.3d at 1021; *NEDACAP*, 752 F.3d at 1007).

In the press release announcing the settlement agreement, DOJ characterizes the agreement as the "first resolution secured under the Department's ongoing national investigation into violations of federal law in connection with the provision of sex-rejecting procedures on minors (often euphemistically called 'gender-affirming care')." DOJ Settlement Press Release, Ex. 15. The press release states that pursuant to the settlement, TCH will pay $10,000,000 in damages and penalties, and also agreed to terminate its gender-affirming care services and instead dedicate "millions" to establish a "detransitioners" clinic. *Id.* The allegations underlying this settlement include violations of the False Claims Act ("FCA") and Food, Drugs, and Cosmetics Act ("FDCA"). *Id.*

The press release quotes Acting Attorney General Todd Blanche  as saying, "'[t]he Justice Department will use every weapon at its disposal to end the destructive and discredited practice of so-called 'gender-affirming care' for children[.]'" *Id.* Associate Attorney General Stanley

8

Woodward echoed the Bondi Directive, stating "'[t]oday's resolution furthers that commitment and puts providers of so-called 'gender affirming care' on notice that this Department will vigorously enforce federal law where children are put at risk.'" *Id.; see* the Bondi Directive, Doc. No. 1-6 at 4 ("The Department of Justice will not sit idly by while doctors, motivated by ideology, profits, or both, exploit and mutilate our children. [...] I am putting medical practitioners, hospitals, and clinics on notice."). The press release notes that settlement efforts, along with all "these matters and the investigations into sex-rejecting procedures on minors," are being led by DOJ's new Enforcement and Affirmative Litigation Branch. DOJ Settlement Press Release, Ex. 15. As Plaintiffs noted in their Opposition to the Motion to Dismiss, this newly created Branch is headed by Lisa Hsiao and tasked with "filing lawsuits against states" and others that violate the Administration's gender-related policies. *See* Ps' Opp'n at 1, 10-11, 13-14 (discussing the Enforcement and Affirmative Litigation Branch).[4]

### 3. Colorado Supreme Court Decision Finding Termination of Gender-Affirming Care Violates State Antidiscrimination Law

Plaintiffs further bring the Court's attention to a decision by the Colorado Supreme Court issued on May 18, 2026, finding that Children's Hospital of Colorado violated state anti-discrimination laws when it terminated gender-affirming care services for minors in response to federal threats. *Boe v. Children's Hosp. Colorado*, 2026 WL 1382147 (Colo. May 18, 2026) (attached as Exhibit 17) (hereinafter "Colorado Order"). This opinion is relevant to Plaintiffs' standing argument that state providers that terminate or limit gender-affirming care as a result of the challenged Executive Order and DOJ Directives face increased and imminent litigation risk

---

[4] The proceedings in the RIH-related cases discussed *infra* also indicate that the underlying investigations are being carried out by members of the Enforcement and Affirmative Litigation Branch. During oral argument in the District of Rhode Island, the court asked the government whether the Texas attorney that had signed the brief "was in charge of this investigation in Texas," and DOJ responded: "I wouldn't -- he's working in collaboration with the Enforcement & Litigation Branch team on this case." Transcript of May 12, 2026 Oral Argument before the District of Rhode Island at 78-79 (attached as Exhibit 16).

and costs under state antidiscrimination laws. Ps' Opp'n at 19; Transcript of April 23, 2026 Oral Argument, Doc. No. 99, at 63-69. The Colorado Supreme Court ordered the hospital to immediately resume offering the gender-affirming care services it terminated. Colorado Order, Ex. 17. In reaching this decision, the Colorado Supreme Court noted that DOJ's efforts to subpoena gender-affirming care providers are "an example of the unrelenting nature of this administration's efforts to attack providers of gender-affirming care." *Id.* at *9.

### 4. Another Federal Court Vacates and Enjoins Federal Agency Investigations Targeting Gender-Affirming Care

Plaintiffs further inform this Court of two opinions from the U.S. District Court for the District of Columbia enjoining Federal Trade Commission investigations that target medical professional associations that support medically necessary gender-affirming care. *Endocrine Society v. Federal Trade Commission*, No. CV-26-512, 2026 WL 1257289 (D. D.C. May 7, 2026) (attached as Exhibit 18) (hereinafter "Endocrine Society Order"); *World Prof. Ass'n of Transgender Health v. Fed. Trade Comm'n*, No. 26-cv-00532, 2026 WL 1257321, at *2-4 (D.D.C. May 7, 2026) (attached as Exhibit 19) (hereinafter "WPATH Order"). These decisions are relevant to the issues of standing and ripeness and to Plaintiffs' allegations of imminent harm stemming from this administration's active efforts to stamp out provision of transgender health care pursuant to the challenged Executive Order.

On May 7, 2026, in *Endocrine Society v. Federal Trade Commission*, Chief Judge James E. Boasberg preliminarily enjoined the Federal Trade Commission ("FTC") from enforcing a civil investigative demand ("CID") against the Endocrine Society, a preeminent professional association in the field of endocrinology that has published Clinical Practice Guidelines for the treatment of gender dysphoria. Endocrine Society Order, Ex. 18. Judge Boasberg found the Endocrine Society was likely to succeed in showing the FTC's CID chilled the organization's

speech about gender-affirming care in violation of the First Amendment. *Id.* at *9-10. In so holding, Judge Boasberg described the CID as "one more step in a multiagency campaign to stamp out" gender-affirming care, including the "legion of investigations into proponents of transgender medical care" and subpoenas initiated by the Department of Justice ("DOJ"). *Id.* at *11-12. He noted that "[a] slew of courts has characterized [the DOJ subpoenas] as a 'smokescreen' for the Government's 'true objective of pressuring' providers into ceasing their gender-affirming-care practices," and found "the same systemic targeting of proponents of medical treatment for gender incongruence at work here" by the FTC. *Id.* at *2 (quoting *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *7 (D. Colo. Jan. 5, 2026)), *14. Judge Boasberg further found the organization was likely to succeed in asserting a constitutional cause of action against the agency, noting "a plaintiff subject to unconstitutional action by executive officers may sue to enjoin those actions." *Id.* at *8 (citing *Davis v. Passman*, 442 U.S. 228, 242 (1979)).

To protect the Endocrine Society from becoming the "latest casualty in some Executive Branch agencies' bid to investigate hospitals, medical providers, and charitable organizations that support transgender health," Judge Boasberg preliminarily enjoined enforcement of the CID. *Id.* at *14.

Also on May 7, 2026, Judge Boasberg granted the World Professional Association of Transgender Health's ("WPATH") motion for a preliminary injunction against the FTC's investigation of the group, noting the similarity between WPATH's and the Endocrine Society's cases. WPATH Order, Ex. 19.

Dated: May 22, 2026

**ANDREA JOY CAMPBELL**
Attorney General of the Commonwealth of
Massachusetts
By: */s/ Adam M. Cambier*
Adam M. Cambier (BBO No. 690525)
  Assistant Attorney General
Allyson Slater (BBO No. 704545)
  Director, Reproductive Justice Unit
Chloe Cable (BBO No. 708179)
Morgan Carmen (BBO No. 716769)
Jak Kundl (BBO No. 713951)
  Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
(617) 963-2278
adam.cambier@mass.gov
allyson.slater@mass.gov
chloe.cable@mass.gov
morgan.carmen@mass.gov
jak.kundl@mass.gov

*Counsel for the Commonwealth of
Massachusetts*


**ROB BONTA**
Attorney General of the State of California
By: */s/ Hilary A. Burke Chan*
Hilary A. Burke Chan*
  Deputy Attorney General
Neli Palma*
  Senior Assistant Attorney General
Nimrod Pitsker Elias*
  Supervising Deputy Attorney General
Crystal Adams*
  Deputy Attorney General
1515 Clay Street, Suite 2000
Oakland, CA 94612
(510) 879-3096
Hilary.Chan@doj.ca.gov

*Counsel for the State of California*


**LETITIA JAMES**
Attorney General of the State of New York
By: */s/ Galen Sherwin*
Galen Sherwin*
  Special Counsel, Reproductive Rights
Travis W. England*
  Deputy Chief, Civil Rights Bureau
Rabia Muqaddam*
  Chief Counsel for Federal Initiatives
Zoe Ridolfi-Starr*
Adam Shoop**
  Assistant Attorneys General
28 Liberty St.
New York, NY 10005
(212) 416-8000
Galen.sherwin@ag.ny.gov
Travis.england@ag.ny.gov
Rabia.muqaddam@ag.ny.gov
Zoe.ridolfi-starr@ag.ny.gov
Adam.shoop@ag.ny.gov

*Counsel for the State of New York*


**WILLIAM TONG**
Attorney General of the State of Connecticut
By: */s/ Janelle R. Medeiros*
Janelle R. Medeiros*
  Special Counsel for Civil Rights
By: */s/ Emily Gait*
Emily Gait*
  Co-Special Counsel for Reproductive
Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Emily.gait@ct.gov
Janelle.Medeiros@ct.gov

*Counsel for the State of Connecticut*

**KWAME RAOUL**
Attorney General of the State of Illinois
By: */s/ Aleeza Strubel*
Aleeza Strubel*
    Complex Litigation Counsel, Special
Litigation Bureau
Abigail R. Durkin*
    Assistant Attorney General II, Special
Litigation Bureau
115 S. LaSalle Street, 35th Floor
Chicago, IL 60603
(773) 914-3046
Aleeza.Strubel@ilag.gov
Abigail.Durkin@ilag.gov

*Counsel for the State of Illinois*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware
By: */s/ Vanessa L. Kassab*
Ian R. Liston*
    Director of Impact Litigation
Vanessa L. Kassab*
    Deputy Attorney General
Jennifer Kate Aaronson*
    Deputy Attorney General
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
Jennifer.aaronson@delaware.gov

*Counsel for the State of Delaware*

**BRIAN L. SCHWALB**
Attorney General of the District of
Columbia
By: */s/ Samantha Hall*
Samantha Hall*
    Assistant Attorney General
400 Sixth Street, N.W.
Washington, DC 20001
(202) 788-2081
samantha.hall@dc.gov

*Counsel for the District of Columbia*

**ANNE E. LOPEZ**
Attorney General of the State of Hawaiʻi
By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
    Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
    Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**AARON M. FREY**
Attorney General of the State of Maine
By: */s/ Vivian A. Mikhail*
Vivian A. Mikhail*
    Deputy Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
vivian.mikhail@maine.gov

*Counsel for the State of Maine*

**ANTHONY G. BROWN**
Attorney General of the State of Maryland
By: */s/ Keith M. Jamieson*
Keith M. Jamieson*
    Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.state.md.us

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of the State of Michigan
By: */s/ Neil Giovanatti*
Neil Giovanatti*
Daniel Ping*
  Assistant Counsel General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
PingD@michigan.gov

*Counsel for the State of Michigan*

**AARON D. FORD**
Attorney General of the State of Nevada
By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
  Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-2496
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**JENNIFER DAVENPORT**
Acting Attorney General of the State of New Jersey
By: */s/ Lauren E. Van Driesen*
Lauren E. Van Driesen*
Bryce K. Hurst*
  Deputy Attorneys General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5279
Lauren.VanDriesen@law.njoag.gov
Bryce.Hurst@law.njoag.gov

*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General of the State of New Mexico
By: */s/ Amy Senier*
Amy Senier (BBO No. 672912) *
  Senior Counsel
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060
asenier@nmdoj.gov

*Counsel for the State of New Mexico*

**JOSH SHAPIRO**
In his official capacity as Governor of the Commonwealth of Pennsylvania
By: */s/ Aimee D. Thomson*
Jennifer Selber*
  General Counsel
Aimee D. Thomson*
  Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(223) 234-4986
aimeethomson@pa.gov

*Counsel for Governor Josh Shapiro*

**PETER F. NERONHA**
Attorney General of Rhode Island
By: */s/ Kathryn T. Gradowski*
Kathryn T. Gradowski*
  Special Assistant Attorney General
Julia C. Harvey*
  Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
kgradowski@riag.ri.gov
jharvey@riag.ri.gov

*Counsel for the State of Rhode Island*

**JOSHUA L. KAUL**                          *Pro hac vice granted
Attorney General of the State of Wisconsin
 By: */s/ Jody J. Schmelzer*                **Pro hac vice pending
Jody J. Schmelzer*
  Assistant Attorney General
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707
(608) 266-3094
jody.schmelzer@wisdoj.gov

*Counsel for the State of Wisconsin*

15

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed this Motion with the Court's Electronic Court Filing system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

May 22, 2026                                        /s/ Zoe Ridolfi-Starr
                                                   Zoe Ridolfi-Starr