# EXHIBIT 93

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO**<br>1437 Bannock St.<br>Denver, CO 80202 | DATE FILED<br>September 8, 2026 8:00 PM<br>FILING ID: 4FA5A542BACBB<br>CASE NUMBER: 2026CV30232 |
| BELLA BOE, by and through her mother Becky Boe;<br>CHLOE COE, by and through her father Clark Coe;<br>DANIELLE DOE, by and through her mother Denisha Doe;<br>GABRIELLA GOE, by and through her mother Grace Goe;<br>All of whom are minor patients and their parents, as representatives of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CHILDREN'S HOSPITAL COLORADO,<br><br>Defendants. | ▲COURT USE ONLY▲ |
| *Attorneys for Plaintiffs*:<br><br>Paula Greisen (#19784)<br>GREISEN LAW, LLC<br>6110 E. Colfax Avenue, Suite 4-216<br>Denver, COLORADO 80220<br>(303) 876-7663<br>pg@greisenlaw.com<br><br>John McHugh (#45456)<br>DEMANDING EQUALITY, INC.<br>3615 Delgany St., Suite 1100<br>Denver, Colorado 80216<br>(720) 315-1096<br>john@demandingequality.com | Case Number: 2026CV30232<br><br>Div: 424 |

**PLAINTIFFS' CONTEMPT HEARING BRIEF**

In order to assist the Court regarding legal issues likely to arise during the contempt hearing, Plaintiffs submit the following Contempt Hearing Brief.

Contempt proceedings are governed by C.R.C.P. 107 which defines contempt as "disobedience or resistance by any person to or interference with any lawful . . . order of the court." C.R.C.P. 107(a)(1). Plaintiffs contend that CHC has engaged in indirect contempt—contempt that does not take place in the court's presence. *In re A.C.B.*, 2022 COA 3, ¶ 21. And they seek remedial sanctions, which are "imposed to force compliance with a lawful order or to compel performance of an act within the [party's] power or present ability to perform." *Id.*, ¶ 24 (quoting C.R.C.P. 107(a)(5). Remedial sanctions require a finding "that the contemnor (1) failed to comply with a lawful court order; (2) knew of the order; and (3) has the present ability to comply with the order." *Id.* (quoting *In re Marriage of Dean*, 2017 COA 51, ¶ 7). A finding of willfulness is not required for remedial sanctions. *In re Marriage of Cy & Kay*, 186 P.3d 88, 94 (Colo. App. 2008).

## <u>BURDENS OF PROOF</u>

### I. Plaintiffs must simply show a prima facie case that CHC has not complied with the preliminary injunction.

Plaintiffs "must simply make a 'prima facie showing' that an order existed and that the contemnor violated it; if a prima facie showing is made, the burden shifts to the alleged contemnor to show an inability" to comply. *People ex rel. State Eng'r v. Sease*, 2018 CO 91, ¶ 23 n.5 (cleaned up, quoting *In re Marriage of Lamutt*, 881 P.2d 445, 447 (Colo. App. 1994)). A prima facie showing is a "lenient standard" that "means the presentation of evidence that, unless rebutted, is sufficient to establish a fact." *Stamp v. Vail Corp.*, 172 P.3d 437, 450, 449 (Colo. 2007); *see also People v. Anadale*, 674 P.2d 372, 374 n.3 (Colo. 1984) ("Prima facie evidence is

evidence sufficient to establish a given fact and which, if not rebutted or contradicted, will remain sufficient.”); *Colo. Civil Rights Com’n v. Big O Tires, Inc.*, 940 P.2d 397, 401 (Colo. 1997) (evidence that plaintiff was African American, terminated from a position she was qualified for, and the position was filled by a Caucasian woman was prima facie evidence of discrimination). “Such proof may be established through discovery, by evidentiary means, or by an offer of proof.” *Stamp*, 172 P.3d at 449.

There is no question that an order exists. The Court issued a preliminary injunction ordering that “Children’s Hospital Colorado is prohibited from refusing to provide medically necessary gender-affirming care to transgender patients pending resolution of this matter[.]” 6/11/26 Order.[1] And, again, there is no dispute that CHC is not “provid[ing] medically necessary gender-affirming care to transgender patients[.]” On June 15, 2026, CHC announced that “the medical providers at the TRUE Center … will not be prescribing, refilling, or renewing gender-affirming prescriptions for patients under 18 years old.” 6/25/26 Am. Mot. for Contempt Ex. 6.

Plaintiffs have easily met their “lenient” burden. Any evidence or explanation that CHC wishes to provide is irrelevant to the determination of whether a prima facie case has been shown. *Stamp*, 172 P.3d at 449; *Anadale*, 674 P.2d at 374 n.3.

## II. The burden shifts to CHC to show inability to comply, which requires evidence that they have taken all reasonable steps to comply.

Once Plaintiffs have met their prima facie case, the burden shifts to CHC to “to show an inability” to comply. *Sease*, 2018 CO 91, ¶ 23 n.5; *In re Marriage of Dean*, 2017 COA 51, ¶ 7 (holding that husband must prove inability to pay child support once wife has shown failure to

[1] Unless otherwise indicated, all emphasis is added.

pay)) (cleaned up); *In re Estate of Elliott*, 993 P.2d 474, 479 (Colo. 2000) ("The burden of proving a present inability to perform rests with the contemnor.") (cleaned up). Proof of an inability to comply requires evidence that the party made "good faith effort[s] to comply" with the order. *In re Marriage of Dean*, 2017 COA 51, ¶ 22; *see also Arevalo v. Colo. Dep't of Human Servs.*, 72 P.3d 436, 440 (Colo. App. 2003) ("The trial court concluded that the department could have complied with this order if it had made … good faith efforts. Accordingly, the trial court's findings that the department had the ability to comply with the order were supported by competent evidence."). To satisfy this burden, the contemnor a contemnor must "offer proof beyond the mere assertion of an inability." *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998); *see also Gen. Steel Domestic Sales, LLC v. Chumley*, 2013 WL 6405407, *9 (D. Colo. Dec. 6, 2013) ("alleged contemnor must produce evidence explaining his noncompliance").

"Good faith efforts" are not limited to actions specifically set forth in the relevant order, but can include taking additional steps. *Arevalo*, 72 P.3d at 439-40. In *Arevalo*, the department was ordered to fill certain group homes and section 8 housing by a date certain, design a plan to identify and track unhoused class members, and comply with staffing requirements. *Id.* at 439. The department claimed it could not comply because the General Assembly had not appropriated money for those purposes. *Id.* The Court of Appeals affirmed a finding of contempt because the department had not take "good faith efforts" to comply because it had not: "did not make a good faith effort to either secure all available necessary funding, attempt to raise additional funding as required by the settlement agreement, or reallocate existing resources to comply[.]" *Id.* at 440

Finally, *Dean* directly addresses CHC's contention that contempt depends on proof that it can "force" the providers to write prescriptions. That is incorrect. In *Dean*, the lower court had

found a mother in contempt of because the children refused to participate in the court-ordered parenting plan. *In re Marriage of Dean*, 2017 COA 51, ¶ 22. Noting it is "difficult" to compel another to act, the Court of Appeals noted that such difficult "does not excuse [a party] from making reasonable good faith efforts to secure" another's compliance. *Id.* The Court of Appeals went on to explain that it was not enough to "refrain from discouraging" another's act, but rather the mother must "take affirmative action to encourage" compliance. *Id.* Like the mother in *Dean*, CHC is not a "powerless bystander" in the decisions and actions of the Providers. CHC has already shown the ability to forbid the Providers from providing medical gender-affirming care and has, for years, imposed a code of conduct on the Providers.

Without support from a single relevant case, CHC contends it will show an inability to comply because there is no "guarantee" that reasonable efforts will produce a specific result. CHC's attempt to rewrite the standard must fail. Like the parties in *Arevalo* and *Dean*, CHC will not be able to meet its burden to prove present inability to comply because it has taken <u>no</u> steps to comply other than updating a single document. It cannot defend that decision by attempting to impose a requirement of proof that actions it has affirmatively chosen <u>not</u> to take would necessarily produce a specific result. As the Court of Appeals explained in *Dean*, it is the failure to take reasonable steps that result in contempt. Finally, CHC's attempt to treat the Providers (who are, at least, independent contractors of CHC) as pure "third parties" is disingenuous.

## <u>SCOPE OF THE INJUNCTION</u>

### I. The preliminary injunction required the provision of care, not just updating a document.

"The purpose of an injunction is to preserve the status quo and to protect the rights of the parties pending a final decision on the merits." *Boe v. Children's Health Colo.*, 2026 CO 32, ¶ 45

(citing *Anderson v. Pursell*, 244 P.3d 1188, 1196 (Colo. 2010)). In its order, the Colorado Supreme Court precisely defined the status quo the injunction was intended to preserve: "Here, before the dispute arose—that is, before CHC suspended medical gender-affirming care to transgender youth—doctors and other medical personnel at CHC provided medical gender-affirming care to youth patients when they deemed it medically necessary to do so. Thus, the status quo that the injunction would preserve is CHC's pre-January 2026 policy of providing medically necessary gender-affirming care to transgender patients under the age of eighteen." *Id.*, ¶ 46. As the Colorado Supreme Court explained "Petitioners are simply asking CHC to revert to the level of care it offered before CHC's suspension of care[.]" *Id.*, ¶ 47; *id.* ("Because CHC offered medical gender-affirming care until January 2026, the requested injunction simply preserves that status pending resolution of the merits of the dispute."). Indeed, the question presented and accepted by the Colorado Supreme Court was "did the district court err by allowing the continued violation of the law and refusing to order Respondents to provide medically necessary gender-affirming care to prevent 'certain' irreparable injury to Plaintiffs." *Id.*, ¶ 13 n.6. Consistent with the Colorado Supreme Court's focus on whether care is being "provided," the injunction issued ordered that "Children's Hospital Colorado is prohibited from refusing to provide medically necessary gender-affirming care to transgender patients pending resolution of this matter[.]" 6/11/26 Order.

Plaintiffs expect that CHC at the hearing will continue to claim that the actual purpose of the preliminary injunction was to require them to update a document called "Scope of Services" that was never introduced at the preliminary injunction hearing and only testified about generally. Once done, according to CHC, CHC has to do nothing else. It is permitted to continue

to deny medically necessary care to Plaintiffs. According to CHC, it is the Providers who are to blame for the continued irreparable harm to Plaintiffs and, apparently, Plaintiffs must sue the Providers directly. CHC's arguments in support of that position all fail.

**II. The corporate practice of medicine doctrine is a red herring.**

CHC attempts to justify its failure to comply by invoking the corporate practice of medicine doctrine. The "corporate practice of medicine" doctrine protects doctors and patients from having corporations (that are presumably more concerned with profits and shareholder satisfaction) intrude into decisions about the quality of care received by an individual patient. *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1067 (Colo. 2002*) superseded by statute on other grounds*. This doctrine is premised on the concept that non-medical personnel should not be in a position to second guess the independent medical treatment decisions made by a doctor concerning his or her patient. *Id.*; *Moon v. Mercy Hosp.*, 373 P.2d 944, 946 (Colo. 1962) (doctrine applies when "a doctor diagnoses, treats or operates on a patient"), *superseded by statute on other grounds*; *see St. Luke's Hosp. Ass'n v. Long*, 240 P.2d 917, 921 (Colo. 1952) 65339533.2 4 (doctrine does not apply to acts outside of "treating a patient" such as "administrative acts and omissions in carrying out the obligations of the hospital").

In *Boe*, the Colorado Supreme Court noted the limited nature of the corpore practice of medicine doctrine in the context of the issues presented. As the court noted, "CHC can't force providers to prescribe gender-affirming care to <u>individual</u> patients, but it can define the scope of services it offers." *Boe*, 2026 CO 32, ¶ 47. No one is contending that if Patient X requests puberty blockers and a provider makes an individualized determination that the prescription is not medically necessary, that CHC should force the provider to write that prescription. But that is

all that the corporate practice of medicine bars. The doctrine does not bar CHC from having and enforcing anti-discrimination policies and it is not implicated by a generalized decision not to provide medical care that is "inextricably intertwined with gender identity." *Id.*, ¶ 55. If it were otherwise, as CHC contends, no hospital could prohibit a provider from practicing medicine under the influence of alcohol or from discriminating against their patients. The evidence will show that, until this very litigation, CHC took the opposite position. For decades, CHC has affirmatively sought to compel its providers to comply with non-discrimination laws. It seems the only reason CHC no forswears that power is because it believes continued discrimination against its patients is in its best interests.

Further, the corporate practice of medicine doctrine is not implicated at all where, as here, the issue is implementing "obligations of the hospital" like compliance with the Preliminary Injunction or CADA. *Long*, 240 P.2d at 921. That is because "the duty to obey the law is non-delegable." *Marr v. Rife*, 503 F.2d 735, 741 (6th Cir. 1974) ("The discriminatory conduct of [a manager or agent], is as a general rule, attributable to the owner … because the duty to obey the law is non-delegable."); *see also Springer v. City & Cnty. of Denver*, 13 P.3d 794, 804 (Colo. 2000) ("The core principle behind all nondelegable duties is that the responsibility is so important to the community that the employer should not be permitted to transfer it to another."); *Gen. Bldg. Contractors Ass'n v. PA*, 458 U.S. 375, 395 (1982) (A non-delegable duty "imposes upon the principal not merely an obligation to exercise care in his own activities, but to answer for the well-being of those persons to whom the duty runs."); *Reid v. Berkowitz*, 2013 COA 110M, ¶ 36 (principal is vicariously liable for acts of its independent contractors in the performance of the principal's nondelegable duty); Restatement (Second) Agency § 2 (employer

is responsible for the conduct of independent contractors (regardless of agency) with respect to non-delegable duties). CHC cannot wash its hands of its obligation to comply with the preliminary injunction (and CADA).

## III. Because the corporate practice of medicine is not implicated, the Providers are agents of CHC.

Agency law "attributes the legal consequences of one person's action to another person" where apparent or actual authority is found. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 19. Actual authority exists when the principal directly states that the actor may perform a particular act on the principal's behalf. *Id.* An actor has apparent authority when a third party reasonably believes that the principal has vested such authority in the actor. *Id*. CHC has previously relied on *Daly v. Aspen Center for Women's Health, Inc.*, to contend that the Providers cannot be CHC's agents. But the Daly court specified that its decision was limited to "the context of medical malpractice actions" because of the corporate practice of medicine doctrine. *Daly*, 134 P.3d 450, 455 (Colo. App. 2005). Since the doctrine does not apply here, CHC is liable for its medical providers' discrimination.

Respectfully submitted this 8th day of September, 2026.

*s/ Paula Greisen*
Paula Greisen (#19784)
GREISEN LAW, LLC
6110 E. Colfax Avenue, Suite 4-216
Denver, CO 80220
(303) 876-7663
pg@greisenlaw.com

*s/ John M. McHugh*
John McHugh (#45456)
DEMANDING EQUALITY, INC.
3615 Delgany St., Suite 1100
Denver, Colorado 80216
(720) 315-1096
john@demandingequality.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, a true and correct copy of the foregoing was duly filed and served through Colorado Courts e-filing:

*s/ John M. McHugh*
John M. McHugh