# EXHIBIT 94

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock St., Room 256<br>Denver, Colorado 80202 | DATE FILED<br>September 8, 2026 10:02 AM<br>FILING ID: 2A05E8C58D7B4<br>CASE NUMBER: 2026CV30232 |
| **Plaintiffs:**<br>BELLA BOE, by and through her mother Becky Boe;<br>CHLOE COE, by and through her father Clark Coe;<br>DANIELLE DOE, by and through her mother Denisha Doe;<br>GABRIELLA GOE, by and through her mother Grace Goe;<br>All of whom are minor patients and their parents, as representatives of a class of similarly situated individuals,<br><br>**v.**<br><br>**Defendant:**<br>CHILDREN'S HOSPITAL COLORADO. | ▲ COURT USE ONLY ▲ |
| *Attorneys for Defendant Children's Hospital Colorado*<br><br>Stanley L. Garnett, No. 12282<br>Leah M. Regan-Smith, No. 57148<br>Kristin L. Arthur, No. 52397<br>Jeffrey I. H. Soffer, No. 51852<br>GARNETT POWELL MAXIMON BARLOW & FARBES<br>1125 17th Street, Suite 2200<br>Denver, CO 80202<br>Phone: 303.991.3344<br>Email: stan.garnett@garnettlegalgroup.com<br>leah.regansmith@garnettlegalgroup.com<br>kristin.arthur@garnettlegalgroup.com<br>jeff.soffer@garnettlegalgroup.com<br><br>Elliot R. Peters, admitted *pro hac vice*<br>Cody Gray, admitted *pro hac vice*<br>Michael K. Deamer, admitted *pro hac vice*<br>Kelly M. Hernandez, admitted *pro hac vice*<br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Phone: 415.391.5400<br>Email: epeters@keker.com<br>cgray@keker.com | Case Number: 2026CV30232<br><br>Division: 424 |

| | |
|---|---|
| mdeamer@keker.com<br>khernandez@keker.com | |

**DEFENDANT'S HEARING BRIEF**

"To comply with the requested injunction, the Hospital would need only eliminate its policy ending medical gender-affirming care for transgender youth." (Pls.' Rule 21 Pet. at 39.) This is the representation Plaintiffs made when they requested extraordinary relief from the Colorado Supreme Court. The Supreme Court granted the relief Plaintiffs requested, directing this Court to "issue the requested injunction." *Boe v. Children's Hosp. Colo.*, 2026 CO 32, ¶ 61. This Court ordered "that Children's Hospital Colorado is prohibited from refusing to provide medically necessary gender-affirming care to transgender patients pending resolution of this matter." (Order Granting P.I.) Upon entry of the Plaintiffs' requested injunction, Children's Colorado eliminated its policy ending medical gender-affirming care for transgender youth. Thus, under the plain language of the injunction, and even Plaintiffs' expression of their interpretation of compliance with the injunction, and based on the evidence that will be adduced (and not adduced) at the hearing, there can be no serious dispute that Children's Colorado has complied. That should be the end of this hearing.

For years, Children's Colorado, through its TRUE Center, has been a leader in providing gender-affirming care to transgender youth. Far from discriminating against transgender youth, Children's Colorado has embraced them, and it has supported the medical providers who are at the forefront of both developing and providing gender-affirming care. It is important to understand, however, that Children's Colorado does not provide medical care itself, nor does it employ the medical providers who do so. Pursuant to both Colorado law and contracts between Children's Colorado and the University of Colorado School of Medicine, which employs the

medical providers, Children's Colorado does not employ the medical providers in the TRUE Center, and it is not permitted to practice medicine or control the independent professional judgment of medical providers in their practice of medicine. Instead, Children's Colorado contracts with the University of Colorado School of Medicine, which contracts with medical providers, and those medical providers are extended privileges to use Children's Colorado's facilities to provide medical care and treatment. Children's Colorado does not provide medical care or treatment to patients. Medical providers do.

Children's Colorado has complied with the Court's injunction. It eliminated its policy suspending medical gender affirming care for transgender youth and affirmatively restored that care to the hospital's scope of services. In addition, Children's Colorado updated the TRUE Center website to reflect that change; sent a memorandum to all medical providers with prescribing privileges to inform them of the change; held a town hall for the medical staff where it discussed the change and answered questions; and drafted updated communications guidance for staff with patient-facing roles to ensure patients would be informed of the change to Children's Colorado's scope of services. Despite Children's Colorado's compliance, the medical providers in the TRUE Center have exercised their independent professional judgment and declined to prescribe medical gender-affirming care to minors. They have done so in the face of an unprecedented campaign by the federal government to eliminate this type of care, and not because of any conduct by Children's Colorado. Children's Colorado cannot be held in contempt for the decisions of third parties who it has no legal authority to control.

## ISSUES TO BE ADDRESSED

Plaintiffs seek remedial contempt sanctions here, which are civil in nature and are

intended "to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5). The imposition of "[r]emedial sanctions for contempt must be supported by findings of fact establishing the contemnor (1) did not comply with a lawful order of the court; (2) knew of the order; and (3) has the present ability to comply with the order." *In re Marriage of Cyr*, 186 P.3d 88, 92 (Colo. App. 2008). The burden to prove the first two elements rests on the movant, and "[t]he burden of proving inability to comply with the order rests on the alleged contemnor." *Id.* "A party may be held in contempt only for refusal to do exactly what the court order requires. A party may not be held in contempt for refusal to do that which he is unable to do or that which the court has not ordered him to do." *People v. Lockhart*, 699 P.2d 1332, 1336 (Colo. 1985). "In addition, any remedial aspects of a contempt order must be predicated upon a second finding that the contemnor has the present ability to comply with the order and, thus, purge himself of the contempt." *In re Marriage of Zebedee*, 778 P.2d 694, 698 (Colo. App. 1988). Finally, '[w]hen the court imposes a remedial contempt sanction, it must do so 'in writing or on the record describing the means by which the person may purge the contempt.'" *In re Marriage of Cyr*, 186 P.3d at 92 (quoting C.R.C.P. 107(d)(2)).

Children's Colorado complied with the injunction by removing institutional barriers to gender-affirming care and restoring such care to its scope of services. The alleged noncompliance is the absence of prescriptions from independent providers, not any continuing restriction imposed by Children's Colorado, which itself can neither prescribe medical gender-affirming care nor legally compel medical providers to exercise their independent professional judgment in a particular way. Plaintiffs will offer no evidence that Children's Colorado created

or maintained a barrier to treatment. Should this Court determine that more is required to comply, Children's Colorado lacks the present ability to comply. Accordingly, Children's Colorado is not in contempt. This is a two-step process. First, Plaintiffs must prove non-compliance. Because they cannot do so, that should be the end of the hearing. Even if the Court moves to the second step and requires Children's Colorado to show its inability to comply, the evidence will be overwhelming that Children's Colorado lacks the ability to force the providers to do what plaintiffs seek.

## I. Children's Colorado Is Complying with the Preliminary Injunction.

After this Court denied Plaintiffs' motion for a preliminary injunction, Plaintiffs sought review by the Colorado Supreme Court. In petitioning for review, Plaintiffs represented to the Supreme Court that "[t]o comply with the requested injunction, the Hospital would need only eliminate its policy ending medical gender-affirming care for transgender youth." (Pls.' Rule 21 Pet. at 39.) Then, in support of its petition, Plaintiffs represented to the Supreme Court that "the requested injunction here would merely require the Hospital to remove its newly-instated ban on gender-affirming care for minors." (Pls.' Rule 21 Reply at 20.) "Plaintiff[s] seek to *stop* the Hospital from enforcing a new policy banning the provision of medical gender-affirming care." (*Id.* at 19.) "The relief Plaintiffs seek is directed at the Hospital's categorical policy that denies Plaintiffs access to a class of care and to require the Hospital to permit and provide access to such care within its facilities." (*Id.* at 21.). Now that they have been awarded this relief, and Children's Colorado has complied, Plaintiffs pretend that the injunction requires something different.

When determining that Plaintiffs' requested injunction should enter, the Colorado

Supreme Court relied on Plaintiffs' representations, explaining that Plaintiffs "are asking CHC to allow providers to give medical gender-affirming care to transgender youth if the provider deems such care necessary; they are not asking CHC to force providers to provide such care." *Boe*, at ¶ 47. The Supreme Court went on to clarify that "CHC can't force providers to prescribe gender-affirming care to individual patients, but it can define the scope of services it offers. Because CHC offered medical gender-affirming care until January 2026, the requested injunction simply preserves that status pending resolution of the merits of this dispute." *Id.*

Upon remand from the Colorado Supreme Court, this Court entered the following injunction: "Children's Hospital Colorado is prohibited from refusing to provide medically necessary gender-affirming care to transgender patients pending resolution of this matter." (Order Granting Prelim. Inj.) To comply with the preliminary injunction, Children's Colorado eliminated its policy ending medical gender-affirming care for transgender youth, affirmatively changing its scope of services to include the provision of medical gender-affirming care to minors (and publicizing the change). Because Children's Colorado is a hospital and cannot practice medicine, the only way that Children's Colorado "provides" care is by including such care in the scope of services its privileged medical providers are permitted to provide.

## II. Children's Colorado Did Not Create a *De Facto* Policy of Refusing to Provide Medical Gender-Affirming Care.

Plaintiffs have taken the position that—in spite of the clear, published guidance regarding its scope of services—Children's Colorado has nevertheless continued to refuse to provide medical gender-affirming care by directing, coercing and/or influencing the TRUE Center medical providers into declining to write prescriptions for medical gender-affirming care. This could not be further from the truth. Children's Colorado has gone out of its way to be clear that it

is not, will not, and cannot control the medical providers' independent professional judgment regarding the practice of medicine. Plaintiffs do not have a single piece of evidence supporting this position, which is based entirely on conjecture and speculation, and is offensive to those at Children's Colorado who have dedicated their lives to the care of others.

**a. Children's Colorado's Memorandum to the Medical Providers Did Not Create a De Facto Policy of Refusing to Provide Medical Gender-Affirming Care.**

Based on nothing but conspiracy theories, Plaintiffs assert that the memorandum sent to the medical providers regarding the preliminary injunction constitutes, essentially, a *de facto* policy of Children's Colorado not to provide medical gender-affirming care. The memorandum recounted Children's Colorado's initial suspension of care, the initiation of this lawsuit, the Colorado Supreme Court's opinion, and this Court's subsequent preliminary injunction. It went on to accurately state that Children's Colorado is prohibited from interfering with the medical providers' independent professional judgment regarding medical treatment. It then directed the medical providers to their employer, the University of Colorado School of Medicine, if they had concerns about regulatory issues or potential liability.[1] It strains credulity to assert that reminding the medical providers that Children's Colorado cannot interfere with their independent professional judgment regarding medical treatment, in and of itself, constitutes interference with their independent professional judgment.

**b. The Providers Independently Made This Decision for Valid Reasons.**

---

[1] It should be noted that nowhere in the Colorado Supreme Court's opinion did it raise or address any regulatory or liability risks to the individual medical providers. This complete absence of discussion of such risks to the individual medical providers underscores that the Supreme Court did not contemplate that the preliminary injunction would remove the medical providers' ability to exercise their independent professional judgment.

Children's Colorado expects the Court will hear testimony from the medical providers as to the reasoning behind their decision. The Court will not hear testimony that Children's Colorado directed the Providers to decline to write prescriptions for medical gender-affirming care, because it did not. The Court will not hear testimony that Children's Colorado coerced the Providers to decline to write prescriptions for medical gender-affirming care, because it did not. And the Court will not hear testimony that Children's Colorado influenced the Providers to decline to write prescriptions for medical gender-affirming care, because it did not. What Children's Colorado expects the Court to hear instead are the stories of individuals who have devoted their lives to treating and supporting the gender-diverse community and who have been deeply impacted by the intensely personal decisions they have had to make in response to the current unprecedented attack by the federal government on the transgender community and their caregivers.

The safety risks to the medical providers were discussed in the Non-Party Providers' Motion for a Protective Order, and the risk to the medical providers from the federal government have been front and center since this case began. In the last few months, the federal government's campaign against providers of medical gender-affirming care has grown in both intensity and vitriol. Just last week, on September 4, 2026, the Department of Justice issued a press release announcing that it had entered into a settlement agreement with Mount Sinai Health System to end pediatric gender-affirming care.[2] In that press release, U.S. Attorney General Todd Blanche stated that "[t]he Department of Justice is committed to holding accountable

[2] Press Release, DOJ, *Justice Department Secures Agreement with Mount Sinai to End Pediatric "Gender-Affirming Care"* (Sept. 4, 2026), https://www.justice.gov/opa/pr/justice-department-secures-agreement-mount-sinai-end-pediatric-gender-affirming-care.

medical providers that violate federal law and endanger children through so-called gender-affirming care." *Id.* As the medical providers themselves told their patients, "Ultimately, each of our decisions is driven by the serious risk of federal action that could result in the inability to continue serving and caring for any patients for years into the future."[3]

## III. If Compliance Requires More, Children's Colorado Does Not Have the Present Ability to Comply as of the Day of the Hearing.

The evidence will plainly show that Children's Colorado has eliminated its policy ending medical gender-affirming care for transgender youth, affirmatively changing its scope of services to include the provision of medical gender-affirming care to minors. That is what the injunction required, and Colorado Children's has complied with the injunction. Even if the Court were somehow to conclude that it must do more to force providers to comply with the preliminary injunction, Children's Colorado does not have the present ability to do the same.

### a. The Corporate Practice of Medicine Doctrine Precludes Children's Colorado both from Practicing Medicine and from Controlling Medical Providers' Practice of Medicine.

"The corporate practice of medicine doctrine rests on the idea that 'it is impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine.'" *Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005) (quoting *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1067 (Colo. 2002)). "Under that doctrine, a corporation such as a hospital cannot be licensed to practice medicine and thus cannot

[3] Children's Colorado sent the medical providers' communication to their patients through myChart at the request of the medical providers. Plaintiffs assert that because Children's Colorado sent the communication through myChart, the communication came from and must be attributed to Children's Colorado. Strangely, Plaintiffs did not raise this concern when asserting that utilizing myChart would be an effective and efficient way of disseminating their class notice.

command or forbid any act by a doctor in the practice of medicine." *Lufti v. Brighton Cmty. Hosp. Ass'n*, 40 P.3d 51, 57 (Colo. App. 2001). As the Colorado Supreme Court explained in this case, "CHC can't force providers to provide [medical gender-affirming] care." *Boe*, at ¶ 47.

Even when a hospital extends privileges to a medical provider, "as a matter of law, they are unable to control the medical practice of those physicians." *Hall v. Frankel*, 190 P.3d 852, 861 (Colo. App. 2008); *see* C.R.S. § 25-3-103.7(3) ("Nothing in this section shall be construed to allow any health care facility that employs a physician to limit or otherwise exercise control over the physician's independent professional judgment concerning the practice of medicine or diagnosis or treatment."); *Smith v. Surgery Ctr. at Lone Tree, LLC*, 2020 COA 145M, ¶ 19 (noting that "a hospital may not dictate to a physician how he or she may practice medicine"). Indeed, should a hospital even *attempt* to interfere with a medical provider's independent professional judgment, it may be held liable by the medical provider. C.R.S. § 25-3-103.7(3). The only control a hospital has regarding what medical services are provided by its privileged medical providers is to make such services an option for its privileged providers to present to their patients. C.R.S. § 25-3-103.7(3) ("Nothing in this section shall be construed to affect any health-care facility's decisions with respect to the availability of services, technology, equipment, facilities, or treatment programs, or as requiring any health-care facility to make available to patients or physicians additional services, technology, equipment, facilities, or treatment programs.").

Because Plaintiffs are unable to obtain medical gender-affirming care from Children's Colorado, they reason that Children's Colorado must be failing to provide medical gender-affirming care. This is based on the false assertion that Children's Colorado's decision to offer

certain care within its authorized scope of services is sufficient for Plaintiffs to obtain care. At the preliminary injunction hearing, Plaintiffs' counsel said, "If they can turn it off, they can be ordered to turn it on." (Prelim. Inj. Hearing, 2/5/2026, at 56:3-4.) This statement fundamentally misunderstands the relationship between Children's Colorado and its medical providers. A hospital's decision not to offer a service will result in a patient not receiving that service, but the converse is not true. A hospital's decision to offer a service will result in a patient receiving said service *only if* its medical providers also exercise their independent professional judgment to provide that service. Put logically, a hospital's decision is a necessary and sufficient condition for a service to be withheld, but it is only a necessary condition for a service to be received. Put colloquially, while a hospital can decide what is on the menu, only a medical provider can decide what to order and serve to the recipient.

**a. Medical Providers are not Agents of Children's Colorado.**

Plaintiffs posit that the medical providers in the TRUE Center—who are employed by the University of Colorado School of Medicine—can be characterized as Children's Colorado's "agents." But in any sort of principal-agent relationship, "an agent's authority is constrained by the principal's own legal capacities." *Daly*, 134 P.3d at 453; Restatement (2d) of Agency, § 20. Children's Colorado is a hospital, and "a hospital cannot be licensed to practice medicine." *Lufti*, 40 P.3d at 57. Because Children's Colorado does not have the legal capacity to practice medicine, the medical providers at Children's Colorado cannot be acting under its authority when practicing medicine.

Not only does Children's Colorado lack the legal capacity to practice medicine, but it is also legally prohibited from exercising control over the medical providers' practice of medicine.

*Moses v. Diocese of Colo.*, 863 P.2d 310, 332 (Colo. 1993) (explaining that "the *sine qua non* of the agency relationship is the right of continuous control by the principal over the acts of the agent"); *Daly***,** 134 P.3d at 452 (rejecting the argument that medical staff act as agents of the health center when practicing medicine under respondeat superior, inherent agency, apparent agency, and nonservant agency theories). Moreover, under its contract with the University of Colorado School of Medicine, Children's Colorado has "no right whatsoever to exercise control over . . . the diagnosis or treatment of illness or injury rendered to the Patients by the Providers, or as to the professional methods and means by which the Providers perform their work."[4] When medical providers practice medicine, they do so pursuant to their own authority, their own credentials, and their own independent professional judgment.[5] Indeed, the sort of agency relationship Plaintiffs assert here is exactly the relationship the corporate practice of medicine doctrine prohibits.

**b. There are No Specific Terms that Could be Put into a Contempt Order That Would Purge the Alleged Contempt.**

If Plaintiffs are correct that Children's Colorado is in compliance with the preliminary injunction only if the medical providers are writing prescriptions, there are no means by which Children's Colorado could purge such contempt. "The ability to purge the contempt must lie with the contemnor at the time of the hearing, not through some future transaction to obtain additional resources." *In re Marriage of Sheehan*, 2022 COA 29, ¶ 37. There is nothing

---

[4] (Defendant's Contempt Hearing Exhibit No. 1018 at 13.)

[5] Courts have rejected the argument that physicians employed by the University of Colorado School of Medicine are under Children's Colorado's control. *E.g.*, *Geltner v. Mitchell*, No. 2009CV11343, 2011 Colo. Dist. LEXIS 2119, *35 (Denver Dist. Ct. Sept. 27, 2011) (finding physicians to be public employees and stating that "Colorado law is clear that hospital credentials alone do not give a private hospital the right to control a physician's professional activities").

Children's Colorado can do, at the time of the contempt hearing, that would put prescriptions in the Plaintiffs hands.

Even if Children's Colorado disciplined the medical providers pursuant to its Code of Conduct, there is no guarantee that this action would result in prescriptions being written. More likely, it would just deprive the hospital of providers who could provide these medical services. And, contrary to Plaintiffs' repeated assertions, there has been no finding of discrimination on which to base a disciplinary action in any event. No court has said that CADA has been violated, and Children's Colorado has consistently maintained that CADA has not been violated. Nor is granting privileges to new medical providers a solution. The University of Colorado would need to find qualified physicians willing to provide medical gender-affirming care in a facility that has been singled out by the federal government, the credentialing process would take months, and there is no way to guarantee that new medical providers would not come to the same conclusion the current medical providers have come to and decline to write prescriptions.

The core issue here remains: obtaining medical gender-affirming care requires a prescription, and Children's Colorado is legally prohibited from either providing a prescription or directing that one be provided. *See United States v. Int'l Bhd. of Teamsters*, 899 F.2d 143, 147 (2d Cir. 1990) ("Nor should a contempt order require the contemnor to overstep his lawful authority."). If the only means by which Children's Colorado could purge its contempt is through a nonparty's exercise of their independent professional judgment regarding medical treatment, the proverbial jailhouse keys are not in Children's Colorado's hands. *In re Marriage of Sheehan*, at ¶ 37; *Int'l Bhd. of Teamsters*, 899 F.2d at 147 (noting that "[a] contempt order should not use the contemnor as a 'hostage' to put pressure on third parties" to act).

## CONCLUSION

From the beginning, Children's Colorado has explained that all it can do is change its scope of services; it cannot direct that medications be prescribed. Rather than seeking relief directed at the actual obstacle to obtaining prescriptions, Plaintiffs elected to pursue an injunction directed at Children's Colorado. Now, Plaintiffs have their injunction and Children's Colorado is complying with the injunction. That Plaintiffs' requested injunction has not resulted in Plaintiffs' desired outcome is not a proper basis for holding Children's Colorado in contempt. Children's Colorado has taken every step within its power to comply with the injunction. There is nothing more that it can do.

Dated: September 8, 2026.

**GARNETT POWELL MAXIMON BARLOW & FARBES**

*s/ Stanley L. Garnett*
Stanley L. Garnett, No. 12282
Leah M. Regan-Smith, No. 57148
Kristin L. Arthur, No. 52397
Jeffrey I. H. Soffer, No. 51852

**KEKER, VAN NEST & PETERS LLP**

Elliot R. Peters, admitted *pro hac vice*
Cody Gray, admitted *pro hac vice*
Michael K. Deamer, admitted *pro hac vice*
Kelly M. Hernandez, admitted *pro hac vice*

*Attorneys for Defendant Children's Hospital Colorado*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of September 2026, the foregoing was filed via the Colorado Court E-Filing system which will provide electronic service upon all parties of record.

*s/ Elizabeth Jaremko*
Elizabeth Jaremko, Legal Assistant