UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS, *et al.*,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

Defendants.

Case No. 1:25-cv-12162

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendants' Opposition rests on two flawed premises this Court previously rejected: Plaintiffs lack standing, and the challenged Directives are merely internal enforcement priorities. (Doc No. 149 at 5). Defendants' reliance on *Trump v. California*, 2026 WL 2473573 (U.S. Aug. 24, 2026), is misplaced and disregards the Court's subsequent decision in *USPS v. California*, 2026 WL 2687160 (U.S. Sept. 14, 2026), which illustrates why Plaintiffs have standing here. Defendants continue to distort the Directives' nature, offer no substantive arguments on the merits, and fail to controvert evidence demonstrating Plaintiffs' standing and entitlement to relief.

## ARGUMENT

### I. Plaintiff States Have Standing to Challenge the Directives.

Defendants rely primarily on *Trump v. California* to challenge Plaintiffs' standing (*see* Doc No. 149 at 5–9), but *California* is inapposite for several reasons. First, unlike in *California*, Plaintiffs here no longer seek relief against the President or the EO, but instead seek relief against the implementing agency, its officials, and implementing actions (the Directives) (*see* Doc No. 133 at 9 n.1).[1] And, unlike the executive order challenged in *California*, which the Court found was merely "an internal directive from the President to a subordinate," the Directives challenged here directly threaten *providers* in Plaintiff States, including State Facilities, with liability under specious legal theories. (*See, e.g.*, Doc No. 133-5 at 4–5 (putting providers "on notice")).

Most critically, unlike in *California*, Defendants here have already implemented the EO's mandates, *cf. California*, 2026 WL 2473573, at *2 ("true 'source of any injury' to the States would be the downstream action the Secretary '*might* take in the future'" (citation omitted)), and in a manner plainly not "consistent with applicable law," *id.* This Court need not engage in "prediction"

[1] Plaintiffs request pursuant to Federal Rule of Civil Procedure 41(a)(2) that the Court dismiss the claims against President Trump without prejudice.

or "conjecture" to determine the scope or legality of the implementing actions. *Cf. id.* at *2. Indeed, after the agency in *California* implemented the executive order, the Supreme Court found the controversy had consequently become justiciable. *USPS*, 2026 WL 2687160, at *1.

Finally, despite contesting Plaintiffs' standing and entitlement to relief, Defendants argue the case should be decided solely on the Administrative Record. (Doc No. 150 at 1). Regardless, they fail to controvert Plaintiffs' demonstrated harms (both extant and certainly impending), characterizing them as "immaterial" and either admitting them outright,[2] countering them with improper and meritless legal arguments,[3] or purporting to dispute facts but citing no evidence sufficient to create a factual dispute.[4] For example, Defendants characterize as immaterial and do not dispute testimony that one patient suffered suicidal ideation and another attempted suicide after being denied care following the Directives. (Doc No. 150 ¶¶ 186–187). Because they are not properly controverted, Plaintiffs' facts should be "deemed for purposes of the motion to be

[2] (*See* Doc No. 150 ¶¶ 11–12, 14–17, 23–25, 27–28, 36–37, 40–46, 48, 51, 63, 65–67, 70, 78, 86, 89, 93, 95–96, 99–100, 107, 149–152, 179, 186–187, 192, 198, 201–202, 208–209).

[3] (*See id.* ¶¶ 52, 55, 57, 61–62, 64, 69, 71–76, 79–85, 87–88, 90–92, 94, 97–98, 102–106, 108, 109–110, 112, 153–171, 195, 197, 203–206). Defendants' unsupported legal arguments "are not properly part of . . . a nonmoving party's response [to a Rule 56.1 statement]," *In re Intuniv Antitrust Litig.*, 2020 WL 5045148, at *2 (D. Mass. Aug. 26, 2020), and are also meritless. For example, Defendants object certain facts are "unsupported" because they rely on sources outside the record (*see, e.g.*, Doc No. 150 ¶ 52) or the supporting citation lacks a page number (*see, e.g.*, *id.* ¶ 102). But they fail to articulate why these sources are not subject to judicial notice, *see* Fed. R. Evid. 201; *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (facts on government websites); *Maher v. Hyde*, 272 F.3d 83, 86 n.3 (1st Cir. 2001) (judicial proceedings), and omitting a page number is permissible as long as the citation provides adequate direction to the cited material, *see Rodriguez-Torres v. Gov't Dev. Bank of P.R.*, 750 F.Supp.2d 407, 410–11 (D.P.R. 2010). Defendants further waived the objection that paragraphs 181, 182, and 184 contain expert testimony by failing to raise it when this testimony was first submitted in December 2025, and the objection fails in any event because the declarations cited reflect providers' personal knowledge of the Directives' impact on their own patients or practices. *See United States v. Pontz*, 132 F.4th 10, 19–20 (1st Cir. 2025) (collecting cases); *Downey v. Bob's Disc. Furniture Holdings*, 633 F.3d 1, 6 (1st Cir. 2011).

[4] (*See* Doc No. 150 ¶¶ 13, 18–22, 26, 29–35, 38–39, 47, 49–50, 53, 56, 58, 64, 94, 97–98, 101, 104, 111, 113, 153–155, 170–178, 180–185, 189–191, 193–194, 196, 199–200, 207). Where Defendants attempt to dispute facts, their submissions "do not actually controvert the . . . facts that they purport to address," *Learnard v. Inhabitants of Van Buren*, 182 F.Supp.2d 115, 119 (D. Me. 2002); rest on "distinctions without a difference" or "disingenuous" representations of evidence, *Muniz v. RXO Last Mile, Inc.*, 2023 WL 5353749, at *2 (D. Mass. Aug. 21, 2023); or turn on "semantics, characterizations, [or] implications," *RMB Props. LLC v. 171 Atl. Rd. LLC*, 2026 WL 1091077, at *1 n.1 (D. Mass. Apr. 22, 2026). None of these creates an actual factual dispute. Defendants' reliance on the Bondi Directive to establish medical facts fails because it is tautological, and because this legal document is patently incapable of proving such facts. (*See* Doc No. 150 ¶¶ 181–82, 184).

admitted." L.R. 56.1; *see CMI Cap. Mkt. Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62–63 (1st Cir. 2008).

## II. Plaintiffs are Entitled to Summary Judgment on the Merits of their Claims.

*APA*. Defendants rely on the already-rejected premise that the Directives are mere "enforcement priorities" that simply restate existing law. (*See* Doc No. 149 at 9–12). The Directives' text (*see, e.g.*, Doc No. 133-5 at 4–5) and Defendants' own representations belie their premise. For example, while Defendants concede the FGM Act exempts medically necessary care (Doc No. 118 ¶ 152), they "dispute[] 'gender-affirming care' as defined by Plaintiffs is 'medically necessary,'" and describe such care as "elective cosmetic procedures." (Doc No. 150 ¶ 181). Also, the court in *QueerDoc v. DOJ* did not endorse the Directives' sweeping FDCA theories, finding it "premature at this stage in the proceedings" to consider whether "DOJ's investigation exceeds the substantive reach of the FDCA." 187 F.4th 1112, 1136 (9th Cir. 2026). Defendants do not dispute that the Directives' goal is to effectuate a categorical ban on gender-affirming care, or that the subpoenas and settlements are enforcement actions taken pursuant to the Directives.[5] Indeed, every hospital settlement announced under the Directives requires termination of care for patients under 18, including two in Plaintiff States reached during briefing of this motion.[6] Defendants also mischaracterize Plaintiffs' improper-purpose theory as challenging the President's authority to set policy goals. (*See* Doc No. 149 at 12–14). But Plaintiffs' point is that the Executive may not unilaterally rewrite statutes to serve policy goals, *FDA v. Brown & Williamson Tobacco*, 529 U.S. 120, 125 (2000), and DOJ may not expand its jurisdiction without statutory authorization, *Ciminelli v. U.S.*, 598 U.S. 306, 315 (2023). *QueerDoc* did not hold otherwise. 187 F.4th at 1137.[7]

---

[5] (*See* Doc No. 150 ¶¶ 88, 95, 98, 99; Oral Argument at 00:27–01:10, *In re Admin. Subpoena No. 25-1431-019*, No. 25-2092 (1st Cir. Oct. 7, 2026)).

[6] DOJ, *DOJ Secures Agreements with NYU and UPMC to End Pediatric "Gender-Affirming Care"* (Sept. 18, 2026) [hereinafter "NYU Press Release"].

[7] Regarding reliance, Defendants raise no new arguments and either admit (*see* Doc No. 150 ¶¶ 148–152) or fail to controvert and thereby admit (*see id.* ¶¶ 147, 153, 159–171) Plaintiffs' underlying facts. *See supra* notes 3–4.

*Tenth Amendment*. Defendants repeat arguments previously rejected by this Court or addressed by prior briefing. (*See* Doc No. 149 at 14–15; Doc No. 105 at 39–45; Doc No. 133 at 32–35). That the FCA, FDCA, and FGM statute were validly enacted has no bearing on whether Defendants' novel interpretations of these laws are unconstitutional. *See Gonzales v. Oregon*, 546 U.S. 243 (2006) (statute validly enacted but agency interpretation invalidated).

**III. Each Form of Relief Sought Is Necessary and Appropriate.**

*Vacatur.* The "normal remedy" for an APA violation is "vacatur of the rule and its applicability to all who would have been subject to it." *Massachusetts v. NIH*, 770 F.Supp.3d 277, 329 (D. Mass. 2025), *aff'd*, 164 F.4th 1 (1st Cir. 2026). Defendants' request for party-specific vacatur "fundamentally misunderstands vacatur as a remedy," which operates against the agency action, not a specific party. *Ass'n of Am. Univs. v. DOD*, 806 F.Supp.3d 79, 121 (D. Mass. 2025). And *CASA* expressly declined to extend its reasoning to vacatur. 606 U.S. 831, 847 n.10 (2025).

*Injunctive Relief.* Plaintiffs' uncontroverted evidence proves the Directives have irreparably harmed the States' sovereignty, disrupted health systems, and impeded custodial duties. (Doc No. 133 at 36–37; Doc No. 150 ¶¶ 135–171). Defendants have promised to continue aggressively enforcing the theories underlying the Directives and affirmatively argued vacatur would not prevent them from doing so. (*See* NYU Press Release; Doc No. 150 ¶¶ 88, 95–98; Doc No. 90 at 8). A permanent injunction is thus necessary to ensure they cannot continue their unlawful efforts. *See, e.g.*, *Oregon v. Kennedy*, 831 F.Supp.3d 1048, 1081 (D. Or. 2026) (granting injunction to prevent continued enforcement of policy ruled unlawful, in addition to vacatur and declaratory relief). And the requested injunction is not "vague." (Doc No. 149 at 17). It flows from the requested declaration that the provision of gender-affirming care in accordance with prevailing standards of care recognized under state law, or billing for same, does not violate the statutes at issue; the injunction would prevent Defendants from enforcing the statutes against providers in

Plaintiff States for providing or billing for gender-affirming care consistent with those standards.

*CASA* does not support limiting the requested injunction to State-employed providers (*see* Doc No. 149 at 19), because its holding cautioned against *universal* injunctions. 606 U.S. at 837 & n.1. Here, Plaintiffs seek an injunction only within their borders, tailored to remedy their proven harms and provide "complete relief." *See Doe v. Trump*, 157 F.4th 36, 80–82 (1st Cir. 2025). Limiting the injunction to State providers would not accomplish this because Defendants would continue to trammel Plaintiffs' state laws; States without state-employed providers could not secure care for youth in state custody; and States with such providers would remain overburdened. (*See* Doc No. 134 ¶¶ 135–171, 174–180, 188–200). And as explicitly acknowledged in *CASA*, that a "party-specific" injunction might have the "*practical effect* of benefiting nonparties" does not render it too broad. 606 U.S. at 851–52. Lastly, limiting the injunction to state-employed providers would create a confusing regime in which the same conduct could be a federal crime if performed by one doctor but lawful if performed by another, even within the same state. *See NIH*, 770 F.Supp.3d at 327–30; *PFLAG, Inc. v. Trump*, 769 F.Supp.3d 405, 452 (D. Md. 2025).

*Declaratory Relief.* Defendants similarly conflate the question of whether declaratory judgments can *bind* non-parties with whether they may incidentally *benefit* them. (Doc No. 149 at 16). Plaintiffs here merely seek clarification of "whether the provision of gender-affirming care to adolescents with gender dysphoria is 'independent misconduct' under the Statutes." (Doc No. 105 at 30). Defendants cite no authority that declaratory relief is inappropriate merely because the answer may aid non-parties. Indeed, such relief is common. *See, e.g.*, *New Jersey v. OMB*, 837 F.Supp.3d 258 (D. Mass. 2026).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment, grant Plaintiffs' motion for summary judgment, and enter the requested relief.

Dated: October 19, 2026

**ANDREA JOY CAMPBELL**
Attorney General of the Commonwealth of Massachusetts
By: */s/ Adam M. Cambier*
Adam M. Cambier (BBO No. 690525)
Assistant Attorney General
Allyson Slater (BBO No. 704545)
Director, Reproductive Justice Unit
Morgan Carmen (BBO No. 716769)
Jak Kundl (BBO No. 713951)
Assistant Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2278
adam.cambier@mass.gov
allyson.slater@mass.gov
morgan.carmen@mass.gov
jak.kundl@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**ROB BONTA**
Attorney General of the State of California
By: */s/ Hilary A. Burke Chan*
Hilary A. Burke Chan*
Deputy Attorney General
Neli Palma*
Senior Assistant Attorney General
Kathleen Boergers*
Supervising Deputy Attorney General
Nimrod Pitsker Elias *
Crystal Adams*
Deputy Counsel General
1515 Clay Street, Suite 2000
Oakland, CA 94612
(510) 879-3096
Hilary.Chan@doj.ca.gov

*Counsel for the State of California*

**LETITIA JAMES**
Attorney General of the State of New York
By: */s/ Galen Sherwin*
Galen Sherwin*
Special Counsel, Reproductive Rights
Travis W. England*
Deputy Chief, Civil Rights Bureau
Rabia Muqaddam*
Chief Counsel for Federal Initiatives
Elizabeth A. Brody*
Assistant Solicitor General
Zoe Ridolfi-Starr*
Andres Ivan Navedo*
Assistant Attorneys General
28 Liberty St.
New York, NY 10005
(212) 416-8000
Galen.sherwin@ag.ny.gov
Travis.england@ag.ny.gov
Rabia.muqaddam@ag.ny.gov
Elizabeth.brody1@ag.ny.gov
Zoe.ridolfi-starr@ag.ny.gov
Ivan.navedo@ag.ny.gov

*Counsel for the State of New York*

**WILLIAM TONG**
Attorney General of the State of Connecticut
By: */s/ Emily Gait*
Emily Gait*
Special Counsel for Reproductive Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Emily.gait@ct.gov
mailto:Janelle.Medeiros@ct.gov*Counsel for the State of Connecticut*

**KWAME RAOUL**
Attorney General of the State of Illinois
By: */s/ Aleeza Strubel*
Aleeza Strubel*
Complex Litigation Counsel, Special Litigation Bureau
Abigail R. Durkin*
Assistant Attorney General II, Special Litigation Bureau
115 S. LaSalle Street, 35th Floor
Chicago, IL 60603
(773) 914-3046
Aleeza.Strubel@ilag.gov
Abigail.Durkin@ilag.gov

*Counsel for the State of Illinois*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware
By: */s/ Vanessa L. Kassab*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Jennifer Kate Aaronson*
Deputy Attorney General
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
Jennifer.aaronson@delaware.gov

*Counsel for the State of Delaware*

**BRIAN L. SCHWALB**
Attorney General of the District of Columbia
By: */s/ Samantha Hall*
Samantha Hall*
Assistant Attorney General
400 Sixth Street, N.W.
Washington, DC 20001
(202) 788-2081
samantha.hall@dc.gov

*Counsel for the District of Columbia*

**ANNE E. LOPEZ**
Attorney General of the State of Hawaiʻi
By: */s/ Kalikoʻonālani D. Fernandes*
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**AARON M. FREY**
Attorney General of the State of Maine
By: */s/ Vivian A. Mikhail*
Vivian A. Mikhail*
Deputy Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
vivian.mikhail@maine.gov

*Counsel for the State of Maine*

**ANTHONY G. BROWN**
Attorney General of the State of Maryland
By: /s/ *Keith M. Jamieson*
Keith M. Jamieson*
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.maryland.gov

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of the State of Michigan
By: /s/ *Neil Giovanatti*
Neil Giovanatti*
Daniel Ping*
Assistant Attorneys General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
PingD@michigan.gov

*Counsel for the State of Michigan*

**AARON D. FORD**
Attorney General of the State of Nevada
By: /s/ *Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-2496
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**JENNIFER DAVENPORT**
Attorney General of the State of New Jersey
By: /s/ *Bryce K. Hurst*
Bryce K. Hurst*
Deputy Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5279
Bryce.Hurst@law.njoag.gov

*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General of the State of New Mexico
By: /s/ *Kalista Wilson*
Kalista Wilson*
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
(505) 795-1121
KWilson@nmdoj.gov

*Counsel for the State of New Mexico*

**JOSH SHAPIRO**
In his official capacity as Governor of the Commonwealth of Pennsylvania
By: /s/ *Aimee D. Thomson*
Jennifer Selber*
General Counsel
Aimee D. Thomson*
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(223) 234-4986
aimeethomson@pa.gov

*Counsel for Governor Josh Shapiro*

**PETER F. NERONHA**
Attorney General of Rhode Island
By: /s/ *Kathryn T. Gradowski*
Kathryn T. Gradowski*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
kgradowski@riag.ri.gov

*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
Attorney General of Vermont
By: *s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov
*Attorney for Plaintiff State of Vermont*

**JAY JONES**
Attorney General of Virginia
By: *s/ Megan C. Keenan*
Megan C. Keenan*
Deputy Solicitor General
202 North Ninth Street
Richmond, Virginia 23219
(804) 997-5222
mkeenan@oag.state.va.us

*Attorney for Plaintiff Commonwealth of Virginia*

**JOSHUA L. KAUL**
Attorney General of the State of Wisconsin
By: /s/ *Jody J. Schmelzer*
Jody J. Schmelzer*
Assistant Attorney General
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707
(608) 266-3094
jody.schmelzer@wisdoj.gov

*Counsel for the State of Wisconsin*

*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed this Memorandum of Law along with its attachments with the Court's Electronic Court Filing system and it will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

October 19, 2026

*/s/* **Zoe Ridolfi-Starr**_______
Zoe Ridolfi-Starr